### In re AMERICAN FREIGHT SYSTEM, INC., Debtor.

### AMERICAN FREIGHT SYSTEM, INC., Debtor-in-Possession, Plaintiff,

### v.

### CONSUMER PRODUCTS ASSOCIATES, Defendant.

No. 91–4032–RDR.
Bankruptcy No. 88–41050–11.
Adv. No. 90–7875.

United States District Court,
D. Kansas.

Feb. 28, 1994.

Kurt A. Stohlgren, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO, for American Freight System, Inc.

William C. Conkle, Charles R. Chapman, Conkle & Olesten, Los Angeles, CA, Kurt J. Weinrich, New York City, for Consumer Products Associates.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a long-pending bankruptcy appeal involving an adversary proceeding for the collection of certain freight bills for trucking

services. The bankruptcy court issued an order denying Consumer Products Associates Distributors'[1] (CPAD) motion for arbitration and stay of adversary action pending arbitration. CPAD responded with a request for *de novo* review by this court and a notice of appeal.

■ The court shall first consider CPAD's request for *de novo* review. In this request, CPAD contends that this court should exercise *de novo* review because the bankruptcy court's order arose in a non-core proceeding. The underlying adversary proceeding was commenced by the debtor, American Freight Systems, Inc. (AFS), to collect freight undercharges from CPAD for the difference between the rate filed with the Interstate Commerce Commission (ICC) and the contract rate paid by CPAD. CPAD contends that such a proceeding involving a claim to recover underpaid prepetition freight charges is a non-core proceeding. AFS argues that its action to recover undercharges in accordance with filed rates is in the nature of a turnover proceeding and, therefore, is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

The courts have split on the issue of whether a proceeding to collect undercharges from a shipper is core or non-core under 28 U.S.C. § 157. Compare *In re Best Refrigerated Express, Inc.*, 132 B.R. 420 (Bankr. D.Neb.1991) (core); *In re Total Transportation, Inc.*, 87 B.R. 568 (D.Minn.1988) (same); *In re Chateaugay Corp.*, 78 B.R. 713 (Bankr. S.D.N.Y.1987) (same); *In re Gordons Transports, Inc.*, 51 B.R. 633 (Bankr.W.D.Tenn. 1985) (same) with *In re Olympia Holding Corp.*, 148 B.R. 56 (Bankr.M.D.Fla.1992) (non-core); *In re Oneida Motor Freight, Inc.*, 86 B.R. 344 (Bankr.D.N.J.1987) (same); *In re Tobler Transfer, Inc.*, 74 B.R. 373 (Bankr.C.D.Ill.1987) (same); *In re Maislin Industries, U.S., Inc.*, 50 B.R. 943 (Bankr. E.D.Mich.1985) (same).

In *In re Best Refrigerated Express, Inc.*, the court determined that such an action is a core proceeding and reasoned as follows:

The present action is analogous to the collection of a matured account receivable.

Such an action is a turnover proceeding under 11 U.S.C. § 542(b). Section 542(b) requires an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, to pay such debt to the trustee. The debts owed by the defendants to the debtor were matured because the duties under the contract between the parties were fully performed and there are no claims of incomplete or improper performance. Turnover is one of the trustee's traditional remedies to collect property of the estate and Congress has specifically stated that an action on a matured debt is one right a trustee may pursue. An action to collect a matured debt, as in these cases, is a traditional type of proceeding which is at the core of a bankruptcy. Accordingly, this is a core proceeding under 11 U.S.C. § 157(b)(2)(E).

132 B.R. at 421 (citations omitted).

This court is persuaded by this reasoning. We shall apply it here and deny CPAD's request for *de novo* review.

The court shall now turn to CPAD's appeal. In the bankruptcy court, CPAD sought to stay the adversary proceeding pending arbitration based upon a clause contained in the written contracts between CPAD and AFS which provided for arbitration of any and all disputes between the parties before the American Arbitration Association in Los Angeles, California.

The bankruptcy court denied CPAD's motion, holding that Congress intended that claims to collect the filed rate be nonarbitrable. The bankruptcy court reasoned as follows:

AFS filed this suit to collect the difference between the rate billed and the tariff rate. CPAD contends this dispute can be arbitrated pursuant to the contract between CPAD and Smith's. Although CPAD is not specific about what exactly it wants to arbitrate, it appears it is whether AFS can collect the filed tariff rate. The [Interstate Commerce Act] was enacted to

---

**1.** The defendant was erroneously named in the adversary complaint as Consumer Product Associates. The court shall refer to the defendant in this memorandum and order as CPAD, as was done by the bankruptcy court.

prevent price discrimination and, as the Supreme Court discussed in Maislin, the courts have furthered this policy by strictly enforcing collection of the filed tariff rate. If this claim were arbitrable, the filed rate doctrine would be circumvented. Therefore, it can be inferred that Congress intended claims to collect the tariff rate to be nonarbitrable.

CPAD contends that the court should enforce the written agreement between CPAD and AFS and compel AFS to arbitrate its claims against it. CPAD asserts that its contractual right to arbitration is not preempted by either the Interstate Commerce Act (ICA), 49 U.S.C. § 10101 *et seq.*, or the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* CPAD argues that an arbitrator can and should resolve the questions of fact and law that are present in the adversary proceeding.

■ The bankruptcy court's findings of fact are reviewed under a clearly erroneous standard. *In re Perma Pacific Properties,* 983 F.2d 964, 966 (10th Cir.1992). The bankruptcy court's conclusions of law are subject to de novo review. *Id.* "[O]n the mixed question of whether facts satisfy the proper legal standard, we conduct a de novo review if the question primarily involves the consideration of legal principles and apply the clearly erroneous standard if the question is primarily a factual inquiry." *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 940 F.2d 564, 572 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 589, 116 L.Ed.2d 614 (1991) (citation omitted).

■ In determining whether to grant a stay for arbitration, a court must consider the following:

[F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

*Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987) (citations omitted). There appears to be no dispute that the parties agreed to arbitrate. The dispute centers around the second and third considerations—the scope of the agreement and whether Congress intended AFS's claims to be nonarbitrable.

■ CPAD initially contends the bankruptcy court erred in deciding that AFS' claims were nonarbitrable because the court mistakenly determined that CPA was seeking to arbitrate only the issue of whether AFS can collect the filed rate. CPAD asserts that it was not seeking to arbitrate this issue but, rather, was seeking to arbitrate the issues of which tariffs were applicable, which goods were shipped, and whether the bills of lading were accurate. CPAD argues that the bankruptcy court failed to note that these issues were raised in a declaration of Russ Kalvin, owner and president of CPAD, which was attached to its petition for order compelling arbitration and to stay adversary action pending arbitration. CPAD contends that these matters are within the scope of the arbitration agreement and are not preempted by the ICA.

AFS counters that CPAD did not provide adequate support for these contentions. As stated in its brief on appeal:

[A]t no point has CPAD specifically alleged, or presented evidence for, the basis of these conclusionary allegations. Neither the Declaration of Russ Kalvin, nor any other pleading submitted on behalf of CPAD, contains any specifics regarding the "inappropriateness" of the filed rate. The record contains no evidence upon which a substantive dispute subject to arbitration could be based.

AFS further argues that even if a substantive dispute within the scope of the arbitration agreement is present, Congress intended that filed rate undercharge claims be nonarbitrable.

■ Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, written agreements to submit a controversy to arbitration are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Once a court finds that an arbi-

tration agreement has been made and that a party has failed to comply with the agreement, the court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. In deciding whether to compel arbitration, the court must begin by asking whether the parties have agreed to arbitration and whether the present dispute falls within the agreement. The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and the existence of an arbitrable dispute. In order to prevail on an assertion of arbitrability, the moving party is required to produce some evidence which tends to establish its claim. *Engineers Association v. Sperry Gyroscope Co.*, 251 F.2d 133 (2d Cir. 1957), *cert. denied,* 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958); *Banque De Paris et des Pays–Bas v. Amoco Oil Co.*, 573 F.Supp. 1464, 1468 (S.D.N.Y.1983). If there is any doubt as to whether a claim is subject to arbitration, it must be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983).

In its motion to compel arbitration filed in the bankruptcy court, CPAD stated: "As set forth more fully in the Declaration of Russ Kalvin ..., [CPAD] vigorously disputes that it owes any money to [AFS]. Further, even assuming, arguendo, that [CPAD] does owe money (sic) [AFS], [CPAD] vigorously disputes the amount owed." The declaration of Russ Kalvin, the owner and president of CPAD, contains the following:

    [CPAD] vigorously disputes that it owes any money to either Smith's or to [AFS]. Even assuming, for the sake of argument, that [CPAD] does owe money to either Smith's or to [AFS], [CPAD] vigorously disputes the amount owed. [CPAD] contests [AFS's] allegation that it did not pay the correct tariff rates, or that incorrect tariff rates were used to bill, for Smith's services to [CPAD]. [CPAD] disputes what the applicable tariff rates actually were during the relevant period of time. [CPAD] disputes that the tariff rates which [AFS] contends were applicable to the shipments were reasonable. Even as-

suming, for the sake of argument, that the tariffs which [AFS] alleges are applicable to the shipments are in fact both applicable and reasonable, [CPAD] disputes that [AFS's] application of the tariffs to the numerous shipments at issue, and its calculation of the amounts allegedly owing, is correct.

In its order, the bankruptcy court failed to address the allegations contained in Mr. Kalvin's declaration. The court suggested that CPAD was "not specific" about the issues that it sought to arbitrate and found that it appeared that AFS sought to arbitrate the issue of whether AFS could collect the filed tariff rate. Although this court is sympathetic to the conclusions reached by the bankruptcy court, we find that the bankruptcy court erroneously overlooked the issues sought to be arbitrated by CPAD. The court has thoroughly reviewed the materials submitted by CPAD to the bankruptcy court, and we acknowledge that they are, in places, less than clear. Nevertheless, the thrust of the motion to compel arbitration and the materials in support was not to seek arbitration of its liability to pay the appropriate filed rates, but to seek arbitration of which rates are applicable. The declaration of Mr. Kalvin was adequate to present the nature of the arbitrable claims.

▮▮▮▮ Having determined that the bankruptcy court overlooked the issues that CPAD sought to arbitrate, we turn to the issue of whether Congress intended that these issues be nonarbitrable. The party opposing arbitration bears the burden of showing "that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). If such an intention exists, it will be deductible from the text of the "filed rate doctrine" of the ICA, its legislative history, or an "inherent conflict" between arbitration and the underlying purposes of the "filed rate doctrine." *Id.*

A carrier subject to the ICA "may not charge or receive a different compensation for ... transportation or service than the

rate specified in the tariff," which the carrier must file with the ICC. 49 U.S.C. § 10761(a). This "filed rate" governs the relationship between shipper and carrier. *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 126, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990). As explained in *Maislin:*

> "The legal rights of shipper as against carrier in respect to a rate are measured by the published tariff. Unless and until suspended or set aside, this rate is made, for all purposes, the legal rate, as between carrier and shipper. The rights are defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.... This stringent rule prevails, because otherwise the paramount purpose of Congress—prevention of unjust discrimination—might be defeated."

*Id.* (quoting *Keogh v. Chicago & Northwestern Railway Co.,* 260 U.S. 156, 163, 43 S.Ct. 47, 49–50, 67 L.Ed. 183 (1922)).

The duty to file tariffs and charge only those rates is essential to the stabilization of rates and the prevention of price discrimination. *Id.* From these requirements, courts have fashioned the "filed rate doctrine" which, in part, precludes equitable defenses to the collection of the filed tariff. *Id.,* 497 U.S. at 127, 110 S.Ct. at 2766. This admittedly rigid approach was deemed necessary to prevent carriers from intentionally misquoting rates in order to offer certain shippers discounts or rebates, thereby engaging in the price discrimination the ICA had designed to prevent. *Id.* The only exception to this doctrine is where the ICC finds the filed rate unreasonable. *Id.* at 128, 110 S.Ct. at 2766–67.

In *Maislin,* the Supreme Court considered the ICC's then newly created "negotiated rates" policy, which the ICC had adopted to deal with attempts by carriers to collect filed tariffs despite having negotiated lower rates with shippers. In formulating the "negotiated rates" policy, the ICC determined that a carrier engages in an unreasonable practice when it attempts to collect the filed rate after parties negotiated a lower rate, and relieved the shipper of liability for the filed rate. The *Maislin* Court struck down the ICC negoti-

ated rates policy, finding it to be blatantly inconsistent with the filed rate doctrine and the scheme of the ICA.

The bankruptcy court concluded that Congress intended claims concerning whether the filed rate can be collected to be nonarbitrable. We agree with that determination. *Maislin* established that a carrier can collect the appropriate filed rate. This conclusion does not mean, however, that the issues we have found raised by CPAD's motion to compel are nonarbitrable. The justification found by the bankruptcy court for concluding that an issue concerning whether a trucking company can collect a filed tariff is nonarbitrable is not present in determining whether these issues are nonarbitrable. As noted by the bankruptcy court, if a claim concerning whether a trucking company could collect a freight charge based on the filed tariff rate were arbitrable, the filed rate doctrine would be circumvented. This rationale does not apply to the issues sought to be arbitrated by CPAD. These issues will not in any manner circumvent the filed rate doctrine. The particular issues raised by CPAD concern matters which are proper in a case involving a claim under the filed rate doctrine. *See, e.g., In re Penn Central Transportation Co.,* 477 F.2d 841, 844 (3d Cir.1973).

■ The court must next consider whether CPAD's right to arbitration is preempted by the Bankruptcy Code. CPAD, relying upon *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149 (3d Cir.1989), contends that the Bankruptcy Code does not preempt its right to arbitration.

In *Hays & Co.,* the Third Circuit Court of Appeals held that federal courts lack discretion to deny enforcement of a contractual arbitration clause invoked in the context of a non-core adversary proceeding brought by a debtor's trustee. 885 F.2d at 1155–62. In reaching this holding, the court cited the strong national policy favoring arbitration and the apparent lack of conflict, in the specific context of that case, between the policies underlying the FAA and the Bankruptcy Code. *Id.* at 1157–62.

In its brief, CPAD suggests that this court should apply the holding of *Hays & Co.* because of the similarities between the two cases. Specifically, CPAD contends that this case, like *Hays & Co.*, involves a non-core adversary proceeding and a lack of conflict between the policies underlying the FAA and the Bankruptcy Code.

CPAD's argument is based upon its contention that the adversary proceeding at issue involved a non-core matter. This court, however, has determined otherwise. This court has decided that an adversary proceeding brought by the trustee to collect freight undercharges is a core proceeding under 28 U.S.C. § 157(b)(2)(E). The question then becomes whether the bankruptcy court is precluded from exercising discretion under these circumstances or maintains some discretion to decide whether to submit this matter to arbitration.

In *In re FRG,* 115 B.R. 72 (E.D.Pa.1990), Judge Waldman of the Eastern District of Pennsylvania considered whether the holding in *Hays & Co.* applies to core proceedings. Judge Waldman concluded that *Hays & Co.* did not apply with equal force to a core proceeding. 115 B.R. at 74. He suggested that to remove all discretion from the bankruptcy court in such situations would be "inequitable and illogical." *Id.* He found that the federal policy in favor of arbitration inherently conflicts with and jeopardizes another federal policy established by the Bankruptcy Code which is protecting the rights of creditors. *Id.* at 75. Accordingly, he determined that the bankruptcy court retained discretion to determine if the arbitration clause should be enforced. *Id.*

This court is in agreement with Judge Waldman's decision in *FRG.* The teachings of *Hays & Co.* are not applicable to an adversary proceeding involving a core matter. The court believes that the bankruptcy court should have the opportunity to exercise its discretion to determine if the arbitration clause should be enforced.

In sum, the court finds it necessary to remand this action to the bankruptcy court for further proceedings in accordance with this opinion. The court remands this case to the bankruptcy court to determine whether the arbitration clause should be enforced in light of the policies and objectives of the Bankruptcy Code. *See In re Chorus Data Systems, Inc.,* 122 B.R. 845, 852 (Bankr. D.N.H.1990) ("[T]he only proper inquiry for a bankruptcy court in these circumstances is whether the text or purposes of the Bankruptcy Code would be violated so significantly by enforcing an arbitration clause in the particular factual circumstances of the case before the Court that it can fairly be said that Congress could not have intended those provisions or purposes to be overridden by the Federal Arbitration Act.").

**IT IS THEREFORE ORDERED** that the bankruptcy court's order be hereby reversed and remanded. This case is hereby remanded to the bankruptcy court to exercise its discretion and determine whether the arbitration clause should be enforced.

**IT IS SO ORDERED.**