Hoyt Randall Edwards, Jr., and Edwards Motors, Inc., appeal the Etowah Circuit Court's denial of their motion to compel arbitration of claims brought against them by Mark Wayne Costner and Matthew W. Kimbril. We affirm in part, reverse in part, and remand.
 I. Background
On November 23, 2004, Kimbril purchased a 1993 Ford Probe GT automobile from Edwards Motors.[1] In conjunction with Kimbril's purchase of the Ford Probe, Edwards Motors and Kimbril entered into a predispute arbitration agreement, which provided:
 "In connection with the undersigned's acquisition or attempted acquisition of the below described vehicle, by lease, purchase or otherwise, the undersigned and [Edwards Motors] stipulate and agree, in connection with the resolution of any dispute arising out of, relating to, resulting from or concerning all alleged representations, promises and covenants, and arising out of, relating to, resulting from or concerning the contracts) and agreements entered into by the parties and relationships resulting therefrom as follows: That the manufacture, transportation, sale and use of the *Page 759 
below described vehicle is regulated by laws of the United States of America: and, that the contract(s) and agreements entered into by the parties concerning said vehicle evidence transactions substantially involving and affecting interstate commerce sufficiently to invoke the application of the Federal Arbitration Act, 9 U.S.C. § 1, et seq.
The undersigned agree that all disputes not barred by applicable statutes of limitations, resulting from or arising out of or relating to or concerning the transaction entered into or sought to be entered into (including but not limited to: any matters taking place either before or after the parties entered into this agreement, including any prior agreements or negotiations between the parties; the terms of this agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties; the past, present and future condition of the vehicle at issue; the conformity of the vehicle to any contract description; the representations, promises, undertakings, warranties or covenants made by [Edwards Motors], or otherwise dealing with the vehicle; any lease terms or the terms of credit and/or financing in connection therewith; any terms or provisions of any insurance sought to be purchased or purchased simultaneously herewith; any terms or provisions of any extended service contract sought to be purchased or purchased simultaneously herewith; and all claims or disputes as to any body and/or mechanical repair heretofore made, now or hereafter made to the vehicle) shall be submitted to BINDING ARBITRATION, pursuant to the provisions of 9 U.S.C. § 1, et seq., and according to the Commercial Dispute Resolution Procedures and/or Consumer Protocol (depending on the amount in controversy) of the American Arbitration Association (the AAA) then existing in the County where [Edwards Motors] maintains its principal place of business, except as follows: (a) In all disputes in which the matter in controversy (including compensatory and punitive damages and fees and costs) is more than $10,000 but less than $75,000.00, the parties shall arbitrate in accordance with the AAA's Consumer Protocol. In all disputes in which the matter in controversy (including compensatory and punitive damages and fees and costs) is $75,000.00 or more, [Edwards Motors] and the customers shall select one arbitrator from a list of at least 5 suitable arbitrators supplied by the AAA in accordance with and utilizing the AAA strike method, (b) An arbitrator so selected shall be empowered to enter an award of such damages, fees and costs, and grant such other relief, as said arbitrator or arbitrators deem just and proper. Any party to this agreement who fails or refuses to arbitrate in accordance with the terms of this agreement shall, in addition to any other relief awarded, be taxed by the arbitrator or arbitrators with the costs, including reasonable attorney's fees, of any other party who had to resort to judicial or other relief in compelling arbitration. In the event [Edwards Motors] and the undersigned have entered into more than one arbitration agreement concerning any of the matters identified herein, the undersigned and [Edwards Motors] agree that the terms of this arbitration agreement shall control disputes between them. Any provision in this Agreement found to be in conflict with any procedure promulgated by the AAA which shall affect its administration of disputes hereunder shall be considered severed herefrom. With respect to the process of arbitration under the AAA Commercial Rules or Consumer Protocol, *Page 760 
the undersigned and [Edwards Motors] expressly recognize that the rules and protocol and the terms of this agreement adequately protect their abilities to fully and reasonably pursue their respective statutory and other legal rights. NOTE: This agreement is not intended to require arbitration of disputes brought by any party to this agreement in the state district courts of Alabama, provided that the relief sought therein or as a result thereof, including compensation and punitive damages and fees and costs, does not exceed $10,000.00. The parties stipulate that either party's participation in proceedings in Alabama state district courts shall not operate as a waiver of any right to compel binding arbitration upon appeal from said district courts. This agreement shall survive any termination, cancellation, fulfillment or non-fulfillment of any other contract, covenant or agreement related to the vehicle described below, including, but not limited to cancellation due to lack of acceptable financing or funding of any retail installment contract or lease. Any provision herein found to adversely affect the enforcement of this agreement shall be considered severed from the remaining provisions herein, provided that such severance does not prevent the arbitration of the disputes described herein. Further information about arbitration can he obtained directly from the AAA, Atlanta, Georgia, by calling the AAA at 404/___-_____ or from a review of AAA's Commercial Dispute Resolution Procedures and Consumer Protocol, a copy of which is available without charge for review from the AAA. THE UNDERSIGNED HAVE AGREED TO WAIVE THE UNDERSIGNED['S] RIGHT TO A TRIAL BY JUDGE OR JURY IN ALL DISPUTES OVER $10,000.00 AND THAT ARBITRATION SHALL BE IN LIEU OF ANY CIVIL LITIGATION IN ANY COURT AND IN LIEU OF ANY TRIAL BY JUDGE OR JURY FOR ALL CLAIMS OVER $10,000.00. THE TERMS OF THIS AGREEMENT AFFECT YOUR LEGAL RIGHTS. IF YOU DO NOT UNDERSTAND ANY PROVISION OF THIS AGREEMENT OR THE COSTS, ADVANTAGES OR DISADVANTAGES OF ARBITRATION, SEEK INDEPENDENT ADVICE AND/OR REVIEW THE WRITTEN CONSUMER AND/OR COMMERCIAL DISPUTE RESOLUTION PROCEDURES AND PROTOCOLS AND/OR CONTACT THE AAA AT THE TELEPHONE NUMBER SHOWN ABOVE BEFORE SIGNING. BY SIGNING YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY EACH OF THE PROVISIONS, COVENANTS, STIPULATIONS AND AGREEMENTS SET FORTH AND REFERENCED HEREINABOVE."
(Capitalization in original.) The agreement was signed by Kimbril and a representative of Edwards Motors.
On November 26, 2004, the brakes on the Ford Probe purportedly failed while Costner was driving, causing the Probe to run into a brick wall. Kimbril was a passenger in the vehicle. Both Costner and Kimbril were injured as a result of the accident. Costner and Kimbril sued Edwards and Edwards Motors, alleging that the brakes had not been repaired before Kimbril purchased the vehicle, that Edwards and Edwards Motors had fraudulently misrepresented to Kimbril that the brakes had been repaired or replaced, that Edwards Motors had breached the terms of the sales contract by not replacing the brakes, and that Edwards and Edwards Motors had failed to warn Kimbril that the *Page 761 
brakes were not working properly and that the brakes had not been replaced or repaired. Costner and Edwards sought a judgment in a sum in excess of the exclusive jurisdictional limits of the circuit court, i.e., $10,000. See
§ 12-11-30(1), Ala. Code 1975. Edwards and Edwards Motors moved the trial court to compel arbitration and to stay the proceedings pending arbitration; the trial court denied the motion. Edwards and Edwards Motors appealed.
 II. Standard of Review
We review de novo the trial court's grant or denial of a motion to compel arbitration. Bowen v. Security Pest Control,Inc., 879 So.2d 1139, 1141 (Ala. 2003). Initially, the party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction involving interstate commerce. Polaris Sales, Inc. v. Heritage Imports,Inc., 879 So.2d 1129, 1132 (Ala. 2003). The moving party "must `"produce some evidence which tends to establish its claim."'" Wolff Motor Co. v. White, 869 So.2d 1129,1131 (Ala. 2003) (quoting Jim Burke Auto., Inc. v.Beavers, 674 So.2d 1260, 1265 (Ala. 1995), quoting in turnIn re American Freight Sys., Inc., 164 B.R. 341, 345
(D.Kan. 1994)). Once the moving party has properly supported his or her motion to compel arbitration, the burden then shifts to the nonmovant to present evidence tending to show that the arbitration agreement is invalid or inapplicable to the case.Polaris Sales, 879 So.2d at 1132.
III. Analysis
Neither party disputes the existence of a contract calling for arbitration; the dispute here centers on whether the underlying transaction involves interstate commerce. Edwards and Edwards Motors argue that the trial court erred in refusing to enforce the arbitration agreement between Edwards Motors and Kimbril because, they say, the underlying transaction involved interstate commerce. Kimbril and Costner, on the other hand, argue that Edwards and Edwards Motors failed to present sufficient evidence in support of or accompanying their motion to compel arbitration to prove the required nexus between the transaction and interstate commerce.
Previously, this Court has noted:
 "The FAA [Federal Arbitration Act] `provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause."' Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003). The Supreme Court of the United States has held that Congress's Commerce Clause power may reach a transaction even if the individual transaction at issue does not have a `substantial effect' on interstate commerce if `in the aggregate the economic activity in question would represent "a general practice . . . subject to federal control.'" 539 U.S. at 56-57, 123 S.Ct. 2037 (quoting Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948)). Thus, the FAA is applicable to transactions (1) that use the channels of interstate commerce, (2) that involve the instrumentalities of interstate commerce, or persons or things in interstate commerce, or (3) that involve general activities having a substantial effect on interstate commerce. See Wolff Motor Co. [v. White], 869 So.2d [1129,] 1132 [(Ala. 2003)] (identifying three broad categories of activity Congress can regulate under its commerce power). Evidence that a party to a transaction does business outside of Alabama or that it regularly deals in interstate commerce is sufficient to demonstrate *Page 762 
that the transaction involves interstate commerce. See Wolff Motor Co., 869 So.2d at 1133-34, 1133 n. 4 (stating in a footnote that any of the reasons set forth in Alafabco — or that the parties regularly deal in interstate commerce as in Wolff Motor Co. — standing alone is sufficient for the application of the FAA and pointing out that the Supreme Court of the United States in Alafabco held that the FAA applied to the transaction there because a party in that case was doing business throughout the southeastern United States)."
McKay Bldg. Co. v. Juliano, 949 So.2d 882, 885
(Ala. 2006). It is unquestionable that the sale of an automobile, either new or used, "use[s] the channels of interstate commerce," "involve[s] . . . things in interstate commerce," and "involve[s] general activities having a substantial effect on interstate commerce." McKay Bldg.Co., 949 So.2d at 885. See also Dan Wachtel Ford,Lincoln, Mercury, Inc. v. Modas, 891 So.2d 287, 292
(Ala. 2004) ("This Court has previously recognized that the purchase of a used automobile from an automobile dealer was a transaction that involved interstate commerce.").
In addition, we have previously stated in HuntsvilleUtilities v. Consolidated Construction Co., 876 So.2d 450
(Ala. 2003), and in Wolff Motor Co., supra, that the movant need not prove that the individual transaction at issue substantially affects interest commerce. "In fact, the [Federal Arbitration Act] can be applicable in a case `without showing any specific effect [of the individual transaction] upon interstate commerce.'" McKay Bldg. Co.,949 So.2d at 886 (quoting Citizens Bank v. Alafabco, 539 U.S. 52,56-57, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003)). Edwards and Edwards Motors submitted Edwards's affidavit in support of the motion to compel arbitration; that affidavit stated, in pertinent part:
 "In addition to Matthew Kimbril agreeing that the [sic] `that the contract(s) and agreements entered into by the parties concerning said vehicle evidence transactions substantially involving and affecting interstate commerce sufficiently to invoke the application of the Federal Arbitration Act, 9 U.S.C. § 1 et seq.' by signing the above quoted arbitration language[,] Edward Motors['] business further substantially affects interstate commerce in that it routinely sells cars that are manufactured, distributed in other states and transported across state lines to Gadsden, Alabama. Further, financing obtained for various customers occurs with financial institutions that are in other states than Alabama and communications with said financial institutions occur across phone lines, mail and other means that cross state lines."
"We also note that the burden on [the movant] is to provide `"`some evidence which tends to establish its claim.'"'" McKay Bldg. Co., 949 So.2d at 886 (quotingWolff Motor Co., 869 So.2d at 1131, quoting in turnJim Burke Auto., 674 So.2d at 1265). Edwards and Edwards Motors have provided an affidavit stating that the vehicles sold by Edwards Motors are transported across state lines, that financing obtained for its customers often comes from financial institutions outside Alabama, and that communication with those financial institutions occurs via interstate telecommunication lines and the United States Postal Service. When Edwards and Edwards Motors submitted Edwards's affidavit, they made a prima facie showing that the transaction involved interstate commerce. The burden then shifted to Costner and Kimbril to produce evidence indicating that the arbitration agreement was invalid or that it is inapplicable. *Page 763 Polaris Sales, 879 So.2d at 1132. Costner and Kimbril argued instead that Edwards's affidavit was insufficient to establish a nexus between the transaction and interstate commerce because, they said, the affidavit failed to comply with Rule 56(e), Ala. R. Civ. P. In other words, they argue that Edwards's affidavit was procedurally deficient.
Costner and Kimbril argue that the affidavit references out-of-state financial institutions and communications with those financial institutions, yet includes no documents evidencing communications with the out-of-state financial institutions. "`"A motion to compel arbitration is analogous to a motion for summary judgment."'" Elizabeth Homes, L.L.C.v. Cato, 968 So.2d 1, 2 (Ala. 2007) (quoting FleetwoodEnters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000), quoting in turn Jim Burke Auto., 674 So.2d at 1265
n. 1). Rule 56(e), Ala. R. Civ. P., which sets forth the requirements for affidavits supporting and opposing motions for summary judgment, states, in pertinent part:
 "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."
Edwards's affidavit is based on his personal knowledge. He mentions Edwards Motors' communications with out-of-state institutions in order to establish that Edwards Motors conducts business in interstate commerce. Proof of the actual communications, i.e., copies of letter and telephone bills, is not required. See, e.g., Dan Wachtel Ford,891 So.2d at 292 (holding that statement from defendant corporation that it had contacted out-of-state corporations in attempt to obtain financing for plaintiff was sufficient to establish that transaction involved interstate commerce). It should further be noted that Edwards established a nexus with interstate commerce by testifying in his affidavit that some, if not all, of the vehicles sold by Edwards Motors had traveled across state lines. Even without the evidence of communications with out-of-state institutions Edwards has established that the Federal Arbitration Act is applicable.
We therefore conclude that the evidence establishes that the transaction in this case involves interstate commerce; thus, the Federal Arbitration Act applies. Therefore, the trial court erred in not granting Edwards and Edwards Motors' motion to compel arbitration as it related to the claims brought by Kimbril.
The same, however, does not hold true for the claims brought by Costner. It is undisputed that Costner did not sign the arbitration agreement. "Generally, `a nonsignatory to an arbitration agreement cannot be forced to arbitrate [his] claims.'" Edward D. Jones Co. v. Ventura,907 So.2d 1035, 1042 (Ala. 2005) (quoting Cook's Pest Control,Inc. v. Boykin, 807 So.2d 524, 526 (Ala. 2001)). However, arbitration agreements may be enforced against a nonsignatory third party under either a third-party-beneficiary theory or an intertwined-claims theory.
A nonsignatory can be bound to an arbitration agreement when the nonsignatory is an intended third-party beneficiary of the contract containing the arbitration agreement. "[I]n order for a person to be a third-party beneficiary of a contract, the contracting parties must have intended to bestow benefits on third parties." Locke v. Ozark City Bd. of Educ.,910 So.2d 1247, 1251 (Ala. 2005). Edwards *Page 764 
and Edwards Motors did not argue to the trial court or to this Court that Costner was an intended third-party beneficiary at the time the arbitration agreement was signed, nor is there evidence in the record indicating that that is the case. Thus, the third-party-beneficiary exception is not applicable.
In the alternative, Edwards and Edwards Motors argue that Costner should be compelled to arbitrate his claims under the intertwined-claims theory. Intertwining is "where nonarbitrable claims are considered so intimately founded in and closely related to claims that are subject to the arbitration agreement that the party opposing arbitration is equitably estopped to deny the arbitrability of the related claims." Ex parteTony's Towing, Inc., 825 So.2d 96, 97 (Ala. 2002). This exception is applicable when a nonsignatory to the arbitration agreement attempts to claim the benefit of the arbitration agreement and to compel a signatory to arbitrate claims involving the signatory and nonsignatory. See, e.g., Lewisv. Oakley, 847 So.2d 307 (Ala. 2002); Ex parteNapier, 723 So.2d 49 (Ala. 1998). It is not applicable, however, when a signatory attempts to compel a nonsignatory third party to arbitrate claims it may have against a signatory. This Court explained the rationale for this distinction in Ex parte Tony's Towing:
 "We have heretofore addressed the doctrine of intertwining in situations where a nonsignatory to an arbitration agreement seeks arbitration over the objection of the signatory. In this case a signatory to the arbitration agreement seeks arbitration over the objection of the nonsignatory. [The signatory] argues that what is `sauce for the goose, is sauce for the gander.' In other words, she argues that if a nonsignatory can compel a plaintiff to arbitrate, then denying the plaintiff the right to compel a nonsignatory defendant to arbitrate is unfair. However, this argument skips over the critical and essential element of estoppel as the basis for the theory of intertwining. Here, [the nonsignatory] has never agreed to arbitrate anything and, therefore, it is not estopped from avoiding arbitration.
 "This very point was recently addressed in E.I. DuPont de Nemours Co. v. Rhone Poulenc Fiber Resin Intermediates, S.A.S., 269 F.3d 187
(3d Cir. 2001), where the United States Court of Appeals for the Third Circuit noted that one of the theories relied upon to obtain arbitration was that `courts have bound a signatory to arbitrate with a non-signatory "at the nonsignatory's insistence because of `the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.'"' 269 F.3d at 199 (quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993)) (quoting in turn McBro Planning Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344
(11th Cir. 1984)). The Third Circuit then held:
 "`With reference to the second theory of equitable estoppel, appellants rely on a series of cases in which signatories were held to arbitrate related claims against parent companies who were not signatories to the arbitration clause. In each of these cases, a signatory was bound to arbitrate claims brought by a non-signatory because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and *Page 765 
duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations. . . .
 "`Appellants recognize that these cases bind a signatory not a non-signatory to arbitration, but argue that this is a distinction without a difference. They are wrong.
 "`Indeed, the Second Circuit recently rejected the same "distinction without a difference" argument:
 "`"As these cases indicate, the circuits have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed. As the district court pointed out, however, `[t]he situation here is inverse: E S, as signatory, seeks to compel Thomson, a non-signatory.' While E S suggests that this is a non-distinction, the nature of arbitration makes it important. Arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so. In the line of cases discussed above, the courts held that the parties were estopped from avoiding arbitration because they had entered into written arbitration agreements, albeit with the affiliates of those parties asserting the arbitration and not the parties themselves. Thomson, however, cannot be estopped from denying the existence of an arbitration clause to which it is a signatory because no such clause exists. At no point did Thomson indicate a willingness to arbitrate with E S. Therefore, the district court properly determined these estoppel cases to be inapposite and insufficient justification for binding Thomson to an agreement that it never signed."
 "`Thomson-CSF, S.A. [v. American Arbitration Ass'n], 64 F.3d [773] at 779 [(2d Cir. 1995)] (internal citations omitted).'
 "269 F.3d at 201-02 (some emphasis original; some emphasis added) (footnotes omitted). [The signatories attempting to compel arbitration] are therefore not in a position to insist that [the nonsignatory] submit to arbitration based upon the doctrine of intertwining."
825 So.2d at 98-99 (emphasis in original). See also ClementContract. Group, Inc. v. Coating Sys., L.L.C.,881 So.2d 971 (Ala. 2003), and Hill v. National Auction Group,Inc., 873 So.2d 244 (Ala.Civ.App. 2003).
 "`[B]oth federal and state courts have consistently held that the duty to arbitrate is a contractual obligation and that a party cannot be required to submit to arbitration any dispute that he did not agree to submit. The language of the contract entered into by the parties determines whether a particular dispute should be submitted to arbitration. . . .'"
UBS Fin. Servs., Inc. v. Johnson, 943 So.2d 118, 121
(Ala. 2006) (quoting Capital Inv. Group, Inc. v.Woodson, 694 So.2d 1268, 1270 (Ala. 1997)). We cannot compel Costner to arbitrate his claims against Edwards and Edwards Motors "without re-writing or, indeed, creating a contract calling for arbitration where none exists." Exparte Tony's Towing, 825 So.2d at 99. Therefore, we affirm the trial court's order insofar as it denies Edwards and Edwards Motors' motion to compel arbitration of Costner's claims against them.
 IV. Conclusion
Because Costner was not a signatory to the arbitration agreement between Kimbril and Edwards Motors and was not an intended third-party beneficiary, the trial *Page 766 
court's order denying Edwards and Edwards Motors' motion to compel arbitration of Costner's claims is due to be affirmed. However, the trial court erred in denying Edwards and Edwards Motors' motion to compel arbitration of Kimbril's claims because the sale of the 1993 Ford Probe and the regular business of Edwards Motors involves interstate commerce. Therefore, we reverse the Etowah Circuit Court's order insofar as it denies the motion to compel arbitration as to the claims brought by Kimbril, and we remand the cause to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
LYONS, STUART, BOLIN, and MURDOCK, JJ., concur.
[1] Although Costner and Kimbril refer to the vehicle as a 1997 Ford Probe, documentation in the record indicates that the Ford Probe was a 1993 model vehicle.