COBB, Chief Justice.
This is an appeal from the order of the Jefferson Circuit Court, granting in part and denying in part the motion to compel arbitration filed by Custom Performance, Inc. We affirm in part, reverse in part, and remand.

Facts

Custom Performance, Inc., a motorcycle-part dealer in Bessemer, also has a service department in which it repairs motorcycles and installs motorcycle parts. According to Johnny Johnson, the president of Custom Performance,
“the service department at [Custom Performance] uses trained technicians and repairs are made to motorcycles, including [the motorcycle involved in the accident underlying this case] using parts and supplies traveling into Alabama from other states, and utilizing tools and instruments provided to the dealership from out of state entities.”
On May 27, 2007, Horace Dawson purchased from Custom Performance two new motorcycle tires. Horace paid Custom Performance to install the motorcycle tires on his motorcycle in its service department. In conjunction with the installation *93 agreement, Horace signed the following arbitration agreement:
“In connection with the undersigned’s acquisition or attempted acquisition of the below described product, by lease, purchase or otherwise, the undersigned and [Custom Performance] stipulate and agree, in connection with the resolution of any dispute arising out of or relating to or concerning all of the contract(s) and agreements entered into by the parties and relationships resulting therefrom, as follows: .... The undersigned agree that all disputes not barred by applicable statutes of limitations, resulting from or arising out of or relating to or concerning the transaction entered into (including but not limited to any matters taking place either before or after the parties entered into this agreement, including any prior agreements or negotiations between the parties; the terms of this agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties; the past, present, and future condition of the product, the conformity of the product to any contract description the representations, promises, undertakings, warranties or covenants made by [Custom Performance], or otherwise or dealing with the product; ... and all claims or disputes as to any body and/or mechanical repairs now or hereafter made to the product) shall be submitted to BINDING ARBITRATION pursuant to the provisions of 9 U.S.C. § 1, et seq., and according to the Commercial Dispute Resolution Procedures of the American Arbitration Association (the AAA) then existing in the County where [Custom Performance] maintains its principle place of business.... THE UNDERSIGNED HAVE AGREED TO WAIVE THE UNDERSIGNED(S) [sic] RIGHT TO A TRIAL BY JUDGE OR JURY AND THAT ARBITRATION SHALL BE IN LIEU OF ANY CIVIL LITIGATION IN ANY COURT AND IN LIEU OF ANY TRIAL BY JUDGE OR JURY....
“Description of product: SERVICE WORK.”
(Capitalization in original.) In late June 2007, Horace purchased a motorcycle helmet from Custom Performance.
On July 1, 2007, Horace and his wife, Tammie,[1] were riding Horace’s motorcycle on Interstate 65 in Alabama when, according to Horace, the rear motorcycle tire deflated suddenly without warning. As a result, Horace contends, he lost control of the motorcycle, and both he and Tammie were thrown from the motorcycle and seriously injured. After the accident, Tammie was transported to a hospital in Montgomery, where she died on July 6, 2007, from head trauma" suffered in the motorcycle accident. According to Horace, at the time of the motorcycle accident, Tammie was wearing the motorcycle helmet Horace had purchased from Custom Performance in June.
Tammie was not present when Horace purchased the motorcycle tires or when he purchased the motorcycle helmet.

Procedural History

On June 19, 2009, Horace filed a complaint in the Jefferson Circuit Court, Bessemer Division, on his own behalf and as administrator of Tammie’s estate. Horace’s complaint named Custom Performance; HongJin Crown America, Inc., the *94 manufacturer of the motorcycle helmet Tammie was wearing; and Sullivans, Inc., a retail distributor of motorcycle helmets from whom Custom Performance had acquired the helmet Horace purchased, as defendants. In the complaint, Horace alleged that “Custom Performance failed to properly install the subject rear tire on the motorcycle.” With regard to the motorcycle helmet, Horace, individually and as administrator of Tammie’s estate, asserted claims against Custom Performance under the Alabama Extended Manufacturer’s Liability Doctrine, as well as claims of negligence, wantonness, failure to warn, and breach of warranty. With respect to the sale and installation of the motorcycle tires, Horace, individually and as administrator of Tammie’s estate, claimed that Custom- Performance negligently or wantonly installed the tires and that Custom Performance failed to warn that it had not replaced the tire valve stems during installation.
On July 31, 2009, Custom Performance filed a motion to dismiss without prejudice and compel arbitration. On September 17, 2009, the trial court granted the motion to compel arbitration with regard to Horace’s personal claims against Custom Performance arising out of the sale and installation of the motorcycle tires. The trial court denied the motion to compel arbitration of the remaining claims against Custom Performance, i.e., Horace’s personal claims with regard to the motorcycle helmet and all the claims asserted on behalf of Tammie’s estate.
On October 2, 2009, Custom Performance appealed from the trial court’s order denying the motion to compel arbitration in part. Horace did not cross-appeal.

Standard of Review

“We review de novo the trial court’s grant or denial of a motion to compel arbitration. Bowen v. Security Pest Control, Inc., 879 So.2d 1139, 1141 (Ala.2003). Initially, the party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction involving interstate commerce. Polaris Sales, Inc. v. Heritage Imports., Inc., 879 So.2d 1129, 1132 (Ala.2003). The moving party ‘must “ ‘produce some evidence which tends to establish its claim.”” Wolff Motor Co. v. White, 869 So.2d 1129, 1131 (Ala.2003) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 (Ala.1995), quoting in turn In re American Freight Sys., Inc., 164 B.R. 341, 345 (D.Kan.1994)). Once the moving party has properly supported his or her motion to compel arbitration, the burden then shifts to the nonmovant to present evidence tending to show that the arbitration agreement is invalid or inapplicable to the case. Polaris Sales, 879 So.2d at 1132.”
Edwards v. Costner, 979 So.2d 757, 761 (Ala.2007).

Analysis

I. Enforceability of the Written Arbitration Agreement

We note that predispute arbitration agreements cannot be specifically enforced under Alabama law. See Ala.Code 1975, § 8-1-41(3) (“The following obligations cannot be specifically enforced: ... An agreement to submit a controversy to arbitration .... ”).
“However, through the combined holdings of several decisions of the United States Supreme Court, the application of [Alabama’s prohibition on the specific enforcement of written arbitration contracts] has been relegated to the rare case of a purely intrastate transaction that could not be said to ‘involve com *95 merce’ in any way. See Southland Corp. v. Keating, 465 U.S. 1, 16, 104 S.Ct. 852 (1984); Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834 (1995); and Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037 (2003).”
Birmingham News Co. v. Horn, 901 So.2d 27, 44 (Ala.2004), overruled on other grounds, Hereford v. D.R. Horton, Inc., 13 So.3d 375 (Ala.2009), and Horton Homes, Inc. v. Shaner, 999 So.2d 462 (Ala.2008). Instead, the Federal Arbitration Act (“the FAA”), 9 U.S.C. § 1 et seq., preempts Alabama law and provides for the specific enforcement of “[a] written provision in ... a contract evidencing a transaction involving commerce.” 9 U.S.C. § 2.
It is undisputed that Horace entered into a written arbitration agreement with Custom Performance in conjunction with Custom Performance’s agreement ■ to install new tires on Horace’s motorcycle. Horace contends, however, that the agreement does not evidence a transaction involving commerce. Therefore, to determine whether the arbitration agreement may be specifically enforced by the courts of this state, we must determine whether the transaction represents a “rare case of a purely intrastate transaction that could not be said to ‘involve commerce’ in any way.” Birmingham News, 901 So.2d at 44.
“[T]he term ‘involving commerce’ in the FAA [is] the functional equivalent of the more familiar term ‘affecting commerce’ — words of art that ordinarily signal the broadest permissible exercise of Congress’ Commerce Clause power.” Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (quoting Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-74, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). Congress’s Commerce Clause power reaches “transactions (1) that use the channels of interstate commerce, (2) that involve the instrumentalities of interstate commerce, or persons or things in interstate commerce, or (3) that involve general activities having a substantial effect on interstate commerce.” McKay Bldg. Co. v. Juliano, 949 So.2d 882, 885 (Ala.2006). “Congress’s Commerce Clause power may reach a transaction even if the individual transaction at issue does not have a ‘substantial effect’ on interstate commerce if ‘in the aggregate the economic activity in question would represent “a general practice ... subject to federal control.” ’ ” Id. (quoting Citizens Bank, 539 U.S. at 56-57, quoting in turn Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948)).
We find it unnecessary to consider every specific way in which the arbitration agreement between Custom Performance and Horace can be said to evidence a transaction that “involv[es] commerce,” 9 U.S.C. §■ 2. The economic activity in question — an agreement between a customer and a dealer pursuant to which the dealer would install new tires on the customer’s motorcycle using parts, tools, and supplies obtained through interstate commerce — is unquestionably a commercial transaction involving a necessary part of a motorcycle, which is inherently an instrumentality of commerce; the activity bears directly on the safety and efficiency of a major channel of interstate commerce — the interstate highways; and, in the aggregate, installation of motorcycle tires substantially affects interstate commerce. See Wolff Motor Co. v. White, 869 So.2d 1129, 1132 n. 3 (Ala.2003) (“ ‘Instrumentalities of interstate commerce — e.g., cars, trains, airplanes, see [United States v.] Bishop, 66 F.3d [569,] 588 [ (3d Cir.1995) ] — retain the inherent potential to affect commerce, unlike other objects of regulation. Thus, even if a particular activity involving an *96 instrumentality might not, through repetition elsewhere, substantially affect interstate commerce during the moment of regulation, the activity still falls within [the reach of the Commerce Clause] because the object of regulation contains the unique capacity to affect commerce at some future point in time.’ ” (quoting United States v. McHenry, 97 F.3d 125, 126-27 (6th Cir.1996))); see also United States v. Ballinger, 312 F.3d 1264, 1269 (11th Cir.2002) (“The instrumentalities of interstate commerce are those ‘persons or things’ that move in interstate commerce, including all cars and trucks, ships, aircraft and anything else that travels across state lines, as do interstate shipments.”); Gibbs v. Babbitt, 214 F.3d 483, 490-91 (4th Cir.2000) (“The term ‘channel of interstate commerce’ refers to, inter alia, ‘navigable rivers, lakes, and canals of the United States; the interstate railroad track system; the interstate highway system; ... interstate telephone and telegraph lines; air traffic routes; television and radio broadcast frequencies.’” (quoting United States v. Miles, 122 F.3d 235, 245 (5th Cir.1997), cert. denied, 523 U.S. 1011, 118 S.Ct. 1201, 140 L.Ed.2d 329 (1998))). Cf. Katzenbach v. McClung, 379 U.S. 294, 302, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) (“This Court has held time and again that this [Commerce Clause] power extends to activities of retail establishments, including restaurants, which directly or indirectly burden or obstruct interstate commerce.”).
Accordingly, the arbitration agreement between Horace and Custom Performance evidences a transaction that is within the reach of Congress’s Commerce Power and the FAA, and it may be specifically enforced in Alabama.

II. Horace’s Claims Relating to the Helmet and the Scope of the Arbitration Agreement

It is undisputed that Horace did not execute an arbitration agreement as part of the June 2007 transaction in which he purchased the motorcycle helmet Tammie was wearing at the time of the accident. However, Custom Performance argues that Horace’s claims pertaining to the motorcycle helmet are encompassed within the arbitration agreement Horace executed in May 2007 in conjunction with the installation of the tires on Horace’s motorcycle.
A trial court may not order arbitration of the issue of arbitrability except upon “ ‘ “clea[r] and unmistakable]” evidence’ ” that the parties agreed to arbitrate that issue. Commercial Credit Corp. v. Leggett, 744 So.2d 890, 892 (Ala.1999) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). The record in this case contains such evidence in the clear and unambiguous language of the arbitration agreement itself. Cf. Jim Burke Auto., Inc. v. McGrue, 826 So.2d 122, 132 (Ala.2002) (holding that the plain language of an arbitration agreement stated the parties’ intent to arbitrate the question of arbitrability); see also Strickland v. Rahaim, 549 So,2d 58, 60 (Ala.1989) (“In order to ascertain the intention of the parties, the clear and plain meaning of the terms of the contract are to be given effect, and the parties are presumed to have intended what the terms clearly state.”).
The arbitration agreement provides:
“The undersigned agree that all disputes ... resulting from or arising out of or relating to or concerning the transaction entered into (including but not limited to ... the terms of this agreement and all clauses herein contained, their breadth and scope ...) shall be submitted to BINDING ARBITRATION.”
(Capitalization in original.)
It is undisputed that Horace assented to the agreement containing the *97 language quoted above. By its clear terms, that language plainly indicates that Custom Performance and Horace intended to arbitrate the issue of arbitrability. Cf. Jim Burke, supra (holding that similar language evidenced an intent to arbitrate a dispute over the arbitrability of claims); Ex parte Waites, 736 So.2d 550, 553 (Ala.1999) (“The arbitration provision ... states that the parties agree to arbitrate any disputes ‘resulting from or arising out of the sale transaction entered into (including but not limited to: the terms of this agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties ...)’ (emphasis added). This language expresses a clear intent to submit to arbitration the issue of arbitrability ... ”). Therefore, the trial court erred in not compelling the parties to arbitrate their dispute over whether Horace’s claims related to the helmet are subject to arbitration.

III. Arbitrability of the Claims Asserted By Tammie’s Estate

It is undisputed that Tammie was not a party to the arbitration agreement Horace signed in conjunction with the installation of the motorcycle tires. “ ‘ “[Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.” ’ ” Central Reserve Life Ins. Co. v. Fox, 869 So.2d 1124, 1127 (Ala.2003) (quoting AT & T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), quoting in turn United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). “Generally, ‘a nonsignatory to an arbitration agreement cannot be forced to arbitrate [his] claims.’ ” Edward D. Jones & Co. v. Ventura, 907 So.2d 1035, 1042 (Ala.2005) (quoting Cook’s Pest Control, Inc. v. Boykin, 807 So.2d 524, 526 (Ala.2001)). However, there are exceptions to this general rule.

A. Third-PaHy-Beneficianj Status

A nonsignatory can be bound to an arbitration agreement if “the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to incidental benefit upon the third party.” Dunning v. New England Life Ins. Co., 890 So.2d 92, 97 (Ala.2003). See also Edwards v. Costner 979 So.2d 757, 763 (Ala.2007). “[I]n order for a person to be a third-party beneficiary of a contract, the contracting parties must have intended to bestow benefits on third parties.” Locke v. Ozark City Bd. of Educ., 910 So.2d 1247, 1251 (Ala.2005). Custom Performánee has presented no evidence indicating that, at the time it and Horace entered into a contract containing an arbitration agreement, they intended to bestow a direct benefit on Tammie. Edwards v. Costner, 979 So.2d at 761 (“The [party moving for arbitration] ‘must “‘produce some evidence which tends to establish its claim.’ ” ’ ” (quoting Wolff Motor Co., 869 So.2d at 1131, quoting in turn Jim Burke Auto., 674 So.2d at 1265, quoting in turn American. Freight Sys., Inc. v. Consumer Prods. Assocs. (In re American Freight Sys., Inc.), 164 B.R. 341, 345 (D.Kan.1994))). Thus, the third-party-beneficiary exception is not applicable to the claims asserted by Tammie’s estate.

B. Equitable Estoppel

“A plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions.” Southern Energy Homes, Inc. v. Ard, 772 So.2d 1131, 1134 (Ala.2000). Thus, this Court has developed a second exception to the general rule that a nonsignatory cannot be forced to arbitrate. Regardless of *98 whether a nonsignatory is in fact a'third-party beneficiary, the nonsignatory is treated as a third-party beneficiary — and is equitably estopped from avoiding arbitration — when he or she asserts legal claims to enforce rights or obtain benefits that depend on the existence of the contract that contains the arbitration agreement. See, e.g., Capitol Chevrolet & Imports, Inc. v. Grantham, 784 So.2d 285, 289 (Ala.2000) (“[T]o maintain her claims, [the nonsignatory plaintiff] must be treated as a third-party beneficiary- [A] third-party beneficiary is afforded all the rights and benefits, and has imposed upon him or her the burdens, of a contract, including those benefits and burdens associated with arbitration. Ex parte Stamey, 776 So.2d 85 (Ala.2000). Therefore, [the nonsignato-ry] cannot base her claims on the contract executed between her husband arid Capitol Chevrolet, and at the same time seek to avoid the arbitration agreement. See Infiniti of Mobile, Inc. v. Office, 727 So.2d 42 (Ala.1999); Delta Constr. Corp. v. Gooden, 714 So.2d 975 (Ala.1998); and Ex parte Dyess, 709 So.2d 447 (Ala.1997).”); Infiniti of Mobile, Inc. v. Office, 727 So.2d 42, 48 (Ala.1999) {“Under these circumstances, [the nonsignatory] is in the position of basing her fraud[-in-the-inducement] and breach-of-warranty claims on the contract ... while at the same time seeking ... to avoid the operation of [an arbitration] provision in that contract.... This she cannot do.” (emphasis added)).
However, as this Court explained in Cook’s Pest Control, Inc. v. Boykin, 807 So.2d 524, 526-27 (Ala.2001), to the extent that the nonsignatory’s claims do not rely ón the existence of the contract containing the arbitration provision, the nonsignatory is not estopped from avoiding arbitration:
“Under the facts of this present case, it appears [the nonsignatory] relies on theories of recovery that do not depend upon the existence of the contract [containing an arbitration provision]. To the extent that she can prove the prima facie elements of her case against [the defendant signatory] without reference to the contract between [the signatories], she is not bound by the arbitration agreement.”
(Emphasis added.) Accordingly, to determine whether Tammie’s estate is equitably estopped from avoiding the contractual burden of arbitration, we must first consider whether, under the circumstances of this case, any of the legal claims asserted by Tammie’s estate are dependent on the existence of the contract that contains the arbitration agreement. Custom Performance argues that Horace, on behalf of Tammie’s estate, asserts “claims of breach of warranty, failure to warn, and negligence in connection with the sale and installation of the subject tires,” Custom Performance’s brief, at 24, and that each of those claims is dependant on the existence of the contract that contains the arbitration agreement. We note, however, that Horace, as administrator of Tammie’s estate, does n'ot assert a breach-of-warranty claim in connection with the sale and installation of the tires.[2] We also note that, in the abstract, neither negligence nor negligent, wanton, or willful failure to warn is necessarily dependant on the existence of a contract. See Ex parte Chevron *99 Chem. Co., 720 So.2d 922, 924-25 (Ala.1998) (setting forth the elements of a claim of negligent failure to warn); Martin v. Arnold, 643 So.2d 564 (Ala.1994) (listing the elements of a claim of negligence). Cf. Cook’s Pest Control, supra (holding that a nursing-home resident injured by fire ants in a nursing home was not required to arbitrate claims of negligence and wantonness against a pest-control company because the claims of the nursing-home resident were not dependent on the existence of the service contract between the pest-control company and the nursing home).
In Infiniti, sttpra, and Cook’s Pest Control, supra, this Court reached seemingly opposite results after analyzing whether, under the particular circumstances of each case, the plaintiffs’ specific causes of action in those cases were dependent on the existence of a contract containing an arbitration provision. Custom Performance cites both cases. However, Custom Performance does not offer any analysis of the particular circumstances of this case or any discussion of whether any of the causes of action Tammie’s estate may have necessarily rely on the contract that contains the arbitration agreement. In short, Custom Performance’s argument is devoid of any meaningful explanation of why In-finiti and Cook’s Pest Control require this Court to compel arbitration of the claims asserted hy Tammie’s estate (cf. Infiniti) or to affirm the denial of the motion to arbitrate those claims (cf. Cook’s Pest Control). It is not the function of this Court to construct and address arguments for the parties on this essential point. Cf. Dykes, 652 So.2d at 251 (“We have unequivocally stated that it is not the function of this Court ... to make and address legal arguments for a party based on un-delineated general propositions not supported by sufficient authority or argument.” (citing Spradlin v. Spradlin, 601 So.2d 76 (Ala.1992))).
Under the circumstances, we find no basis upon which to hold that Tammie’s estate is estopped from avoiding arbitration.

C. “Intertwining Claims” Theory

Custom Performance argues that a distinct and separate basis for requiring Tammie’s estate to arbitrate its claims is the doctrine of intertwining claims. Under this doctrine, a nonsignatory to an arbitration agreement may compel a signatory to arbitrate claims “where arbitrable and nonarbitrable claims are so closely related that the party to a controversy subject to arbitration is equitably estopped to deny the arbitrability of the related claim.” Conseco Fin. Corp. v. Sharman, 828 So.2d 890, 893 (Ala.2001) (citing Cook’s Pest Control, Inc. v. Boykin, 807 So.2d 524 (Ala.2001)); see also Ex parte Tony’s Towing, Inc., 825 So.2d 96, 97 (Ala.2002) (explaining the reasons for limiting the doctrine of intertwining claims to use by the nonsigna-tory in compelling arbitration of a signatory’s claims). The doctrine of intertwining claims “is not applicable, however, when a signatory attempts to compel a nonsigna-tory third party to arbitrate claims it may have against a signatory.” Edwards v. Costner, 979 So.2d at 764 (citing Ex parte Tony’s Towing, supra) (emphasis added).
In this case, Custom Performance, a signatory to the arbitration agreement, seeks to compel arbitration of the claims asserted by Tammie’s estate, when Tammie was a nonsignatory. Under these circumstances, the doctrine of intertwining claims cannot serve as a basis to compel arbitration. See Ex parte Tony’s Towing, supra, and Edwards, supra.

Conclusion

We reverse the trial court’s order insofar as the trial court did not submit to *100 arbitration the question of the arbitrability of Horace’s claims related to the motorcycle helmet. In all other respects, we affirm the order of the trial court. We remand this case to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.

. Tammie Dawson’s first name is spelled “Tammy” in the initial complaint in this case, as well as in some other places in the record. The record as currently composed, however, lends itself to the conclusion that the correct spelling of Horace's wife's first name is "Tammie.”

. We need not evaluate whether the estate's breach-of-warranty claim in connection with the motorcycle helmet is dependant on or subject to the arbitration agreement in the tire-installation contract. Custom Performance makes no such argument. Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (" ‘[I]t is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party -(quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994))).