LYONS, Justice.
Olshan Foundation Repair Company of Mobile, LP (“Olshan”), appeals from the Washington Circuit Court’s denial of its motion to compel arbitration of certain claims asserted against it by Florence B. Schultz and Arnold E. Schultz. We reverse and remand.

Factual Background and Procedural History

The Schultzes own a house in Washington County. Olshan performed repair work on the foundation of the house in August 2006, March 2007, and again in January 2008. In July 2008, the Schultzes sued Olshan, alleging breach of contract, breach of warranty, negligence, and wantonness. Specifically, the Schultzes alleged that Olshan performed the foundation repair work negligently, wantonly, and in an unworkmanlike manner and that their house was damaged as a result. The Schultzes also alleged that the value of their house had decreased as a result of Olshan’s repairs and that they had suffered mental anguish and emotional distress.
Olshan moved to stay the proceedings and to compel arbitration of the Schultzes’ claims against it. The parties engaged in limited discovery on the question of arbitration and presented the following facts to the trial court. Mr. Schultz first hired Olshan to perform repair work on the foundation of the Schultzes’ house in August 2006. Olshan maintains, and the Schultzes admit, that the work in 2006 was done pursuant to a contract signed by Mr. Schultz. That contract, however, cannot be found. It is undisputed that Mrs. Schultz did not sign the 2006 contract. Olshan presented an affidavit of its general manager, who stated that “the contracts Olshan used in connection with its residential foundation repair work in Alabama in 2006 contained an arbitration provision that was identical (or substantially similar) to” the following provision:
“Notwithstanding, any provision in this agreement to the contrary, any dispute, controversy, or lawsuit between any of the parties to this agreement about any matter arising out of this agreement, shall be resolved by mandatory and binding arbitration administered by the American Arbitration Association (‘AAA’) pursuant to the arbitration laws in your state and in accordance with this arbitration agreement and the commercial rules of the AAA to the extent that any inconsistency exists between this ar *600 bitration and such statutes by any court having jurisdiction and in accordance with the practice of such court.”
In their response to Olshan’s motion to compel arbitration, the Schultzes, through counsel, stated: “Mr. Schultz does not deny that [the 2006] agreement contained an arbitration provision.” In an affidavit, Mr. Schultz stated that the condition of his house worsened after Olshan completed the foundation-repair work in 2006.
In March 2007, Mr. Schultz again hired Olshan to perform repair work on the foundation of his house. The record does not establish that the foundation-repair work done by Olshan on the Schultzes’ house in 2007 was related to the work it did in 2006. Mr. Schultz stated in his affidavit that Olshan presented him with a contract for the 2007 work but that he does not recall signing it. Olshan presented to the trial court a contract dated March 2, 2007, signed by Mr. Schultz. The 2007 contract provided that Olshan was to install nine “CableLock Plus Pilings,” which would have a lifetime warranty. The 2007 contract also stated, in relevant part:
“10. The owner may order extra work to be done, not contemplated by this Agreement, in which event a separate Agreement for such work shall be entered into between [Mr. Schultz] and [Olshan]. No oral representation made by anyone can change or modify this agreement.
“11. Notwithstanding, any provision in this agreement to the contrary, any dispute, controversy, or lawsuit between any of the parties to this agreement about any matter arising out of this agreement, shall be resolved by mandatory and binding arbitration administered by the American Arbitration Association (‘AAA’) pursuant to the arbitration laws in your state and in accordance with this arbitration agreement and the commercial rules of the AAA to the extent that any inconsistency exists between this arbitration and such statutes by any court having jurisdiction and in accordance with the practice of such court.”
Mr. Schultz has not denied that the 2007 contract presented by Olshan bears his signature. Mrs. Schultz did not sign the 2007 contract. Steve Scates, who was Ol-shan’s general manager at the time Olshan performed foundation-repair work for the Schultzes, testified at his deposition that Olshan actually installed 12 pilings in 2007. Scates stated: “When we lift up the house, cracks open. So what happened, they had nine pilings scheduled. They did the work. They had to add more piers to make the customer happy.” Scates further explained: “What the contract calls for is an area defined by these nine piers that we are going to repair.... We’re responsible for the area that we say we’ll fix. And even though we assume going in that it will take nine piers, it may take twenty piers.” Mr. Schultz stated that the condition of his house worsened after Ol-shan completed the work in 2007 and that he did not pay Olshan for the work it performed under the 2007 contract.
In January 2008, in an effort, according to Scates, “to provide customer service and to collect,” Olshan performed additional work on the foundation of the Schultzes’ house. In an undated letter from Scates to Mr. Schultz, Scates described the January 2008 work, stating:
“I wanted to send in writing the specific options I see we have available for your home. As you are aware, this is a finance project and the financing will have to be re-committed if we delay much longer.
“As you remember we returned to your home on January 2, 2008 and per *601 formed additional work to insure your CableLoek Piers were correctly installed. It was at this time that we installed 2 additional piers at no cost to you in an attempt to meet your expectation’s [sic] regarding the repair.
“The interior crawlspace was adjusted and due to the nature of that work may require additional adjustment depending on the moisture content and expansive nature of your soil.
“We planned to return with our mason to repair the cracks in your brick facade and have not received a favorable time frame from you regarding this work. We would certainly like to complete our work and satisfy our agreement so your warranty will be instigated and we can get paid.”
It is undisputed that Olshan and the Schultzes did not enter into an additional written agreement for the work Olshan did in 2008. Mr. Schultz stated that the condition of his house again worsened after Olshan’s January 2008 work and that he did not pay Olshan for that work.
The record shows that the materials Ol-shan used in repairing the Schultzes’ foundation in 2006, in 2007, and in 2008 were manufactured in Texas and were shipped to Olshan’s facility in Alabama before being sent to the Schultzes’ house for installation. To pay for the 2007 work, the Schultzes had arranged for financing from Capital One Home Improvement Finance (“Capital One”). The Schultzes were to make payments to Capital One in Georgia and were instructed to contact Capital One’s offices in Utah with any questions regarding their loan.
The Schultzes sued Olshan on July 28, 2008, and, as noted above, Olshan moved to compel arbitration of the Schultzes’ claims. Shortly after Olshan filed its motion, the Schultzes amended their complaint so that Mrs. Schultz stated claims only of negligence and wantonness and no longer joined her husband in his claims of breach of contract and breach of warranty. Presented with the facts stated above, the trial court entered an order on January 22, 2010, stating:
“[T]he Motion to Compel Arbitration as to the plaintiff, Florence B. Schultz, is without merit and is due to be denied. The Court further finds that the Motion to Compel Arbitration as to the plaintiff, Arnold E. Schultz, is granted as to all work performed under the contract dated March 2, 2007, but is denied as to any work performed in 2006 and 2008.”
Olshan appealed.

Standard of Review

“ ‘This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala.2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. “[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (opinion on application for rehearing).’ ”
Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala.2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000)).

*602
Analysis

On appeal, Olshan argues that the trial court erred in denying its motion to compel arbitration as to Mr. Schultz’s claim’s related to Olshan’s 2006 and 2008 foundation-repair work and as to Mrs. Schultz’s negligence and wantonness claims. The trial court’s decision to grant Olshan’s motion as to Mr. Schultz’s claims related to the foundation-repair work Olshan performed in 2007 is not at issue in this appeal.
I. Mr. Schultz’s Claims Related to Work Performed in 2006
Olshan argues that the trial court erred in denying its motion to compel arbitration with respect to Mr. Schultz’s claims arising from the foundation-repair work Olshan performed in 2006 because, it contends, it presented sufficient evidence showing the existence of a contract between it and Mr. Schultz with respect to Olshan’s 2006 repair work, showing that the contract contained a binding arbitration agreement, and showing that the contract evidenced a transaction involving interstate commerce. We agree.
This Court has stated: “[I]n Alabama, predispute arbitration provisions are enforceable so long as the party moving to compel arbitration proves ‘the existence of a contract calling for arbitration and ... that that contract evidences a transaction involving interstate commerce.’” Hereford v. D.R. Horton, Inc., 13 So.3d 375, 379 (Ala.2009) (quoting Title Max of Birmingham, Inc. v. Edwards, 973 So.2d 1050, 1052 (Ala.2007)). It is undisputed that Mr. Schultz signed a contract with Olshan relative to the 2006 repair work and that, in performing that work, Olshan used goods manufactured in Texas. Ol-shan’s employees searched for the 2006 contract but could not locate it. Olshan’s general manager stated that the contract contained an arbitration provision identical or substantially similar to the one in its 2007 contract, the language of which required arbitration of any dispute, controversy, or lawsuit between Olshan and Mr. Schultz arising out of the contract.
Mr. Schultz argues on appeal that this statement is insufficient to establish the terms of the 2006 contract. However, through counsel, Mr. Schultz admitted to the trial court that the 2006 contract contained an arbitration provision. Additionally, Mr. Schultz has not presented any evidence contradicting Olshan’s assertions regarding the contents of the arbitration provision. Mr. Schultz has thus waived this argument. See, e.g., Prattville Mem’l Chapel v. Parker, 10 So.3d 546, 561 (Ala.2008).
Mr. Schultz also argues on appeal that Olshan’s evidence regarding the 2006 contract violates the parol-evidence rule and the best-evidence rule, and he cites Wiggins v. Stapleton Baptist Church, 282 Ala. 255, 210 So.2d 814 (1968) (discussing the circumstances under which parol evidence regarding the contents of a deed is to be admitted), and Rule 1002 and Rule 1004, Ala. R. Evid. (requiring, generally, that original writings must be presented to prove the content of the writings). However, Mr. Schultz did not object to the admission of Olshan’s evidence before the trial court. This Court has stated: “[P]arties ‘may try their case on evidence that would otherwise be inadmissible upon proper objection and ... where evidence violative of the parol evidence rule is admitted without objection, it may be considered and allowed such force and effect as its weight entitles it in construing the agreement of the parties.’ ” Prattville Mem’l Chapel, 10 So.3d at 561 (quoting Alfa Mut. Ins. Co. v. Northington, 561 So.2d 1041, 1044 (Ala.1990)). Because Mr. Schultz did not object to the trial court’s *603 admission of Olshan’s parol evidence regarding the contents of the 2006 agreement, he has waived his arguments regarding that evidence. See Prattville Mem’l Chapel, 10 So.3d at 561 (“Because Memorial Chapel failed to object during trial to the admission of parol evidence regarding the terms of Parker’s agreement with PMG, it now has no basis on which to argue that the evidence should have been excluded. Like Alfa in [Alfa Mutual Insurance Co. v.] Northington, [561 So.2d 1041 (Ala.1990),] Memorial Chapel has waived its arguments regarding parol evidence.”).
The evidence Olshan presented to the trial court is sufficient to establish the existence of a contract between Olshan and Mr. Schultz for the foundation-repair work it performed in 2006 that included an arbitration provision and to establish that that contract evidenced a transaction involving interstate commerce. The parties do not dispute that Mr. Schultz’s claims against Olshan relating to the foundation-repair work Olshan performed in 2006 arise out of the 2006 contract. Accordingly, the burden shifted to Mr. Schultz to present evidence showing that the arbitration provision in the 2006 contract is invalid or that it does not apply to his claims. See Gantt, 882 So.2d at 315. Mr. Schultz has not done so. The trial court, therefore, erred in denying Olshan’s motion to compel arbitration of Mr. Schultz’s claims arising from Olshan’s foundation-repair work performed under the 2006 contract.
II. Mr. Schultz’s Claims Related to Work Performed in 2008
Olshan next argues that the trial court erred in denying its motion as to Mr. Schultz’s claims arising out of the work it did on the Sehultzes’ house in 2008. Specifically, Olshan argues that its work on the Sehultzes’ house in 2008 was done as follow-up or warranty work under the 2007 contract and, therefore, was subject to the arbitration provision in that contract. Ol-shan relies primarily on this Court’s decision in Elizabeth Homes, L.L.C. v. Cato, 968 So.2d 1 (Ala.2007).
In Cato, homeowners who asserted multiple claims against the company that had constructed their house argued that their claims were outside the scope of the arbitration provision in the purchase agreement they had entered into with the company. Specifically, the homeowners asserted that the arbitration provision was not broad enough to encompass their claims that Cato had negligently and wantonly damaged their home when company employees inspected “electrical issues” after construction was completed. The homeowners also asserted that the arbitration provision was not broad enough to encompass their claim that Elizabeth Homes had breached an independent contract by failing to complete certain repairs they had requested. In considering the homeowners’ arguments, this Court stated the following rules of construction:
“In interpreting an arbitration provision, ‘any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbi-trability.’ Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis added; footnote omitted). ‘Thus, a motion to compel arbitration should not be denied “unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.” United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).’ Ex parte Col- *604 quitt, 808 So.2d 1018, 1024 (Ala.2001) (emphasis added).”
Cato, 968 So.2d at 7.
Regarding the homeowners’ claims of negligence and wantonness related to work performed by Elizabeth Homes after construction was completed, Elizabeth Homes argued that the damage complained of was done “during the course of repairs made pursuant to a warranty provision found in the purchase agreement” and, therefore, that the homeowners’ claims arose out of the purchase agreement 968 So.2d at 10. This Court agreed, stating:
“[I]t was the [homeowners’] burden to show that the arbitration provision does not apply to these claims. There is no evidence indicating that Elizabeth Homes’ agent, in checking ‘electrical issues,’ was performing work outside the purchase agreement or pursuant to some other contract or agreement. For all that appears from the record, this work was performed pursuant to, and under the terms of, the purchase agreement. We thus conclude that the [homeowners] have not proven that these claims fall outside the scope of the arbitration provision.”
968 So.2d at 10-11.
Regarding the homeowners’ claims related to incomplete repair work, this Court determined that the homeowners claimed “that as they were preparing to move into the house, they presented Elizabeth Homes with a list of problems, defects, or incomplete work in the house,” 968 So.2d at 11, that a contract arose as a result, and that it was breached when Elizabeth Homes failed to complete the repairs. Regarding those claims, this Court stated:
“[The homeowners] have again failed to present any evidence showing that the arbitration provision in the purchase agreement does not apply. There is no evidence indicating that the parties entered into an implied contract outside the purchase agreement or that a separate contract was created based on the ‘punch list.’ Furthermore, these claims all appear to revolve around alleged deficiencies in the construction of the house. Because the duty to construct the house, and the specifications describing that duty, were all imposed by the purchase agreement, we cannot conclude with ‘positive assurance’ that the [homeowners’] claims do not fall under the terms of the purchase agreement or within the scope of its arbitration provision.”
968 So.2d at 11.
Olshan argues, as did Elizabeth Homes, that the work it did on the Schultzes’ house in 2008 was done as “follow-up” to work done under the 2007 contract and pursuant to a warranty under that contract. The 2007 contract provided for a “lifetime warranty” on Olshan’s work. Ol-shan and the Schultzes did not enter into any written agreement for the work Ol-shan performed in 2008. Scates testified that the work Olshan did in 2008 was done “to provide customer service and to collect.” In his letter to Mr. Schultz, the only evidence in the record describing the work Olshan performed in 2008, Scates states that the work was done “to insure that [the] CableLock Piers were correctly installed” and “in an attempt to meet [Mr. Schultz’s] expectation’s [sic] regarding the repair.” Scates subsequently states: “We would certainly like to complete our work and satisfy our agreement so your warranty will be instigated and we can get paid.” (Emphasis added.)
This evidence shows that the work Olshan performed in 2008 was done either pursuant to a warranty granted by the 2007 contract or in an effort to complete the work contemplated by the 2007 con *605 tract. Olshan has, therefore, presented evidence supporting its argument that the 2008 foundation-repair work was performed pursuant to the 2007 contract and, as a result, is subject to the arbitration provision in that contract. The burden, therefore, then shifted to Mr. Schultz “ ‘ “to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.’”” See Gantt, 882 So.2d at 315 (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000), quoting in turn Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (opinion on rehearing)).
Mr. Schultz argues that the 2007 contract was not broad enough to include the foundation-repair work Olshan performed in 2008. Specifically, Mr. Schultz contends that the 2007 contract provided that only nine pilings would be installed and, therefore, that only claims related to those nine pilings are subject to the arbitration provision. Mr. Schultz also cites paragraph 10 of the 2007 contract, which states: “The owner may order extra work to be done, not contemplated by this Agreement, in which event a separate Agreement for such work shall be entered into between [Mr. Schultz] and [Olshan], No oral representation made by anyone can change or modify this agreement.” Based on this language, Mr. Schultz argues that, if Ol-shan had wanted him to enter into a written contract with respect to the work it performed in 2008, it could have asked for one.
To support his argument, Mr. Schultz contrasts the language of the 2007 contract with much broader language considered by this Court in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kirton, 719 So.2d 201 (Ala.1998). The arbitration provision at issue in that case stated that it applied to “ ‘all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior [to], on, or subsequent to the date hereof, shall be determined by arbitration.’ ” 719 So.2d at 202 (emphasis omitted). This Court stated:
“The ... agreement contains a broadly worded arbitration clause that is clear on its face — it covers ‘any’ and ‘all’ controversies that may arise between [the parties] — and, like unambiguous statutes, it leaves no room for interpretation ....
[[Image here]]
“... [W]e conclude that the language of the arbitration provision in the ... agreement entered into between [the parties] is sufficiently broad to include any and all controversies between them, regardless of the kind of controversy or the date on which the controversy occurred.”
719 So.2d at 203-04. Mr. Schultz argues that because the 2007 contract did not include similarly worded language, it cannot be read as applicable to what Mr. Schultz characterizes as “subsequent transactions.”
We agree that the language in the 2007 contract between Olshan and Mr. Schultz is not so broad as the language presented to this Court in Merrill Lynch. It does not necessarily follow, however, that the 2007 contract is not broad enough to encompass the work done by Olshan on the Schultzes’ house in 2008. The burden is on Mr. Schultz to show that the arbitration provision in the 2007 contract does not apply. However, like the homeowners in Elizabeth Homes, Mr. Schultz has not presented any evidence indicating that the work Olshan performed in 2008 was outside the scope of the 2007 contract or was performed pursuant to some other con *606 tract or agreement. Olshan has presented Scates’s testimony that, under the 2007 contract, Olshan was responsible for the area represented by the nine pilings identified in the contract, whether the actual repairs ultimately required the installation of nine pilings or more or fewer. The only evidence before us regarding the work performed in 2008 shows that it was performed “to insure that [the pilings] were correctly installed” and “to complete [Ol-shan’s] work and satisfy” the 2007 contract. For all that appears in the record, therefore, Olshan’s work in 2008 was performed pursuant to, and under the terms of, the 2007 contract. See Cato, 968 So.2d at 10-11. Accordingly, Mr. Schultz has not proven that his claims are outside the scope of the arbitration provision in the 2007 contract, and we cannot say with “‘positive assurance’ that [Mr. Schultz’s] claims do not fall under the terms of the [2007 contract] or within the scope of its arbitration provision.” 968 So.2d at 11. The trial court, therefore, erred in denying Olshan’s motion to compel arbitration of Mr. Schultz’s claims relating to Olshan’s 2008 repair work.
III. Mrs. Schultz’s Negligence and Wantonness Claims
Olshan contends that the trial court erred in denying its motion to compel arbitration of Mrs. Schultz’s negligence and wantonness claims. Olshan raises several arguments to support its contention, including arguments that Mrs. Schultz was an intended third-party beneficiary under both the 2006 contract and the 2007 contract and that Mrs. Schultz is estopped from asserting that she is not bound by the arbitration provision because her claims depend upon the 2006 and 2007 contracts.
It is undisputed that Mrs. Schultz did not sign either the 2006 contract or the 2007 contract with Olshan. In Custom Performance, Inc. v. Dawson, 57 So.3d 90, 97-99 (Ala.2010), this Court recently explained the circumstances under which a nonsignatory to an arbitration agreement may be forced to arbitrate his or her claims:
“ ‘Generally, “a nonsignatory to an arbitration agreement cannot be forced to arbitrate [his] claims.” ’ Edward D. Jones & Co. v. Ventura, 907 So.2d 1035, 1042 (Ala.2005) (quoting Cook’s Pest Control, Inc. v. Boykin, 807 So.2d 524, 526 (Ala.2001)). However, there are exceptions to this general rule.
“A. Third-Party-Benefxciary Status
“A nonsignatory can be bound to an arbitration agreement if ‘the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to incidental benefit upon the third party.’ Dunning v. New England Life Ins. Co., 890 So.2d 92, 97 (Ala.2003). See also Edwards v. Costner, 979 So.2d 757, 763 (Ala.2007). ‘[I]n order for a person to be a third-party beneficiary of a contract, the contracting parties must have intended to bestow benefits on third parties.’ Locke v. Ozark City Bd. of Educ., 910 So.2d 1247, 1251 (Ala.2005)....
“B. Equitable Estoppel
“ ‘A plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions.’ Southern Energy Homes, Inc. v. Ard, 772 So.2d 1131, 1134 (Ala.2000). Thus, this Court has developed a second exception to the general rule that a nonsig-natory cannot be forced to arbitrate. Regardless of whether a nonsignatory is in fact a third-party beneficiary, the nonsignatory is treated as a third-party beneficiary — and is equitably estopped from avoiding arbitration — when he or she asserts legal claims to enforce rights or obtain benefits that depend on the *607 existence of the contract that contains the arbitration agreement. See, e.g., Capitol Chevrolet & Imports, Inc. v. Grantham, 784 So.2d 285, 289 (Ala.2000) (‘[T]o maintain her claims, [the nonsig-natory plaintiff] must be treated as a third-party beneficiary_ [A] third-party beneficiary is afforded all the rights and benefits, and has imposed upon him or her the burdens, of a contract, including those benefits and burdens associated with arbitration. Ex parte Stamey, 776 So.2d 85 (Ala.2000). Therefore, [the nonsignatory] cannot base her claims on the contract executed between her husband and Capitol Chevrolet, and at the same time seek to avoid the arbitration agreement_’)_
“However, as this Court explained in Cook’s Pest Control Inc. v. Boykin, 807 So.2d 524, 526-27 (Ala.2001), to the extent that the nonsignatory’s claims do not rely on the existence of the contract containing the arbitration provision, the nonsignatory is not estopped from avoiding arbitration:
“ ‘Under the facts of this present case, it appears [the nonsignatory] relies on theories of recovery that do not depend upon the existence of the contract [containing an arbitration provision]. To the extent that she can prove the prima facie elements of her case against [the defendant signatory] without reference to the contract between [the signatories], she is not bound by the arbitration agreement.’
“(Emphasis added.)....
[[Image here]]
“C. ‘Intertwining Claims’ Theory
“... Under this doctrine, a nonsigna-tory to an arbitration agreement may compel a signatory to arbitrate claims “where arbitrable and nonarbitrable claims are so closely related that the party to a controversy subject to arbitration is equitably estopped to deny the arbitrability of the related claim.’ Conseco Fin. Corp. v. Sharman, 828 So.2d 890, 893 (Ala.2001) (citing Cook’s Pest Control, Inc. v. Boykin, 807 So.2d 524 (Ala.2001)); see also Ex parte Tony’s Towing, Inc., 825 So.2d 96, 97 (Ala.2002) (explaining the reasons for limiting the doctrine of intertwining claims to use by the nonsignatory in compelling arbitration of a signatory’s claims). The doctrine of intertwining claims ‘is not applicable, however, when a signatory attempts to compel a non-signatory third party to arbitrate claims it may have against a signatory.’ Edwards v. Costner, 979 So.2d at 764 (citing Ex parte Tony’s Towing, supra) (emphasis added).”
Olshan contends that Mrs. Schultz is a third-party beneficiary under both the 2006 contract and the 2007 contract. However, even if Mrs. Schultz is a third-party beneficiary under the first exception stated above, she has disavowed any status as a third-party beneficiary under the 2006 and 2007 contracts. Olshan’s argument on this point, therefore, is inapposite. The third exception stated above, the intertwining-claims theory, does not apply because Olshan, the signatory, is attempting to compel Mrs. Schultz, the nonsignatory, to arbitrate her claims against it. As to the second exception, equitable estoppel, Ol-shan argues that Mrs. Schultz’s right to recover on her tort claims depends upon the 2006 and 2007 contracts and those claims are therefore subject to the arbitration provision in the contracts.
The Schultzes’ amended complaint states Mrs. Schultz’s allegations of negligence and wantonness as follows:
“8. On or about August 4, 2006, March 2, 2007, and January 2, 2008, the defendant negligently and/or wantonly performed work on the foundation under *608 the plaintiffs’ residence causing damage to the exterior brick facade and surrounding areas on the exterior of the residence as well as damage to the interior walls, floors, windows, doors and other areas inside the residence.
“9. As a proximate result of the defendant’s negligence and/or wantonness the plaintiffs were caused to suffer the following damages and injuries: (a) decreased value of the plaintiffs’ residence; (b) cost of repairs to the plaintiffs’ residence; (c) mental anguish and emotional distress; and (d) inconvenience.
“10. The plaintiffs claim punitive damages from the defendant as a result of its wanton conduct.”
We must consider whether these claims depend upon the existence of the 2006 and 2007 contracts.
Olshan relies in part on this Court’s decision in Capitol Chevrolet & Imports, Inc. v. Grantham, 784 So.2d 285 (Ala.2000). In that case, Robert Grantham purchased a vehicle from Capitol Chevrolet & Imports, Inc. (“Capitol”); he signed an arbitration agreement with Capitol at the time of the purchase. Shortly thereafter, Mr. Grantham returned the vehicle to Capitol for repairs to, among other things, the door locks on the vehicle. Subsequently, Mrs. Grantham “was injured when someone entered the [vehicle] and robbed her. The Granthams allege[d] that the assailant was able to enter the vehicle because the power locks were malfunctioning.” 784 So.2d at 286.
The Granthams sued Capitol and the manufacturer of the vehicle (hereinafter referred to collectively as “Capitol”), alleging breach of contract, breach of warranty, and negligence related to Capitol’s inspection and repair of the vehicle. Capitol moved to compel arbitration. The trial court denied Capitol’s motion as to Mrs. Grantham and as to Mr. Grantham’s negligence claim and granted the motion as to Mr. Grantham’s remaining claims. Capitol appealed.
On appeal, this Court determined that the arbitration agreement was broad enough to encompass Mr. Grantham’s negligence claim. This Court then considered whether Mrs. Grantham’s claims were subject to the arbitration agreement, stating:
“The undisputed evidence demonstrates that Marcia Grantham was a nonsignatory to the sales contracts executed by Robert Grantham and Capitol Chevrolet. She also denies that she is a third-party beneficiary under her husband’s contract with Capitol Chevrolet. Thus, in her effort to avoid arbitration, Marcia Grantham has effectively conceded that she has no right to recover under the sales contract. In order to maintain her claims, Marcia Grantham must be treated as a third-party beneficiary. It is well established that a third-party beneficiary is afforded all the rights and benefits, and has imposed upon him or her the burdens, of a contract, including those benefits and burdens associated with arbitration. Ex parte Stamey, 776 So.2d 85 (Ala.2000). Therefore, Marcia Grantham cannot base her claims on the contract executed between her husband and Capitol Chevrolet, and at the same time seek to avoid the arbitration agreement. See Infiniti of Mobile, Inc. v. Office, 727 So.2d 42 (Ala.1999); Delta Constr. Corp. v. Gooden, 714 So.2d 975 (Ala.1998); and Ex parte Dyess, 709 So.2d 447 (Ala.1997).”
784 So.2d at 289 (emphasis added). This Court, therefore, determined that Mrs. Grantham’s claims, including her negligence claim, depended upon her husband’s contract with Capitol. As a result, she could not avoid the arbitration agreement.
Mrs. Schultz relies on this Court’s decision in Cook’s Pest Control, Inc. v. Boykin, *609 807 So.2d 524 (Ala.2001). In that case, Earnestme Allen was bitten more than 300 times by fire ants while she was a patient at Knollwood Park Hospital (“Knollwood”). Knollwood had a contract with Cook’s Pest Control, Inc. (“Cook’s”), whereby Cook’s provided pest-control services to Knoll-wood. That contract contained an arbitration agreement. Through her attorney-in-fact, Allen sued Knollwood and Cook’s, alleging negligence, wantonness, and breach of contract as a third-party beneficiary of the contract between Knollwood and Cook’s. Cook’s moved to compel arbitration. Allen subsequently amended her complaint to abandon the breach-of-contract claim. The trial court denied the motion to compel arbitration. Cook’s appealed.
On appeal, this Court distinguished Grantham, stating:
“Cook’s also relies on our recent opinion in Capitol Chevrolet & Imports, Inc. v. Grantham, 784 So.2d 285 (Ala.2000), for the proposition that a third party’s claims can be so dependent upon a contract that a mere disavowal of third-party-beneficiary status cannot defeat a properly supported motion to compel arbitration. Under the facts of Grant-ham, that was the correct conclusion. However, under the facts of this present case, it appears Allen relies on theories of recovery that do not depend upon the existence of the contract. To the extent that she can prove the prima facie elements of her case against Cook’s without reference to the contract between Cook’s and Knollwood, she is not bound by the arbitration agreement.”
807 So.2d at 526-27 (emphasis added). This Court, therefore, determined that the trial court correctly denied Cook’s motion to compel arbitration to the extent that Allen’s claims did not depend upon the contract between Knollwood and Cook’s.
Based on this Court’s statements that the case was decided “under the facts of this present case” and “[t]o the extent that [Allen could] prove the prima facie elements of her case,” this Court’s decision in Cook’s is limited to the circumstances presented therein. The theories of recovery on which Allen relied are not sufficiently developed in Cook’s so as to permit us to conclude that Allen’s claims are sufficiently similar to Mrs. Schultz’s claims to justify our reliance on Cook’s in this case.
We must consider the facts presented to us in this case to determine whether the tort claims asserted by Mrs. Schultz depend upon the existence of the 2006 and 2007 contracts containing the arbitration provision. See, e.g., Dawson, 57 So.3d at 98 (quoting this Court’s statements in Cook’s and stating: “Accordingly, to determine whether [the plaintiff] is equitably estopped from avoiding the contractual burden of arbitration, we must first consider whether, under the circumstances of this case, any of the legal claims asserted by [the plaintiff] are dependent on the existence of the contract that contains the arbitration agreement.”).[1] Mrs. Schultz alleges that Olshan negligently and wantonly performed work on the foundation of her house in August 2006, March 2007, and January 2008, thus damaging her house. It is undisputed that Olshan’s work on which Mrs. Schultz bases her claims was done pursuant to the 2006 and 2007 con *610 tracts. To support her claims, Mrs. Schultz must prove that Olshan owed her a duty. Mrs. Schultz has not alleged, and we do not see how she may prove, the existence of such a duty without reference to the 2006 and 2007 contracts. As in Grantham, therefore, Mrs. Schultz’s claims depend upon the existence of the contracts containing the arbitration provision. Mrs. Schultz cannot simultaneously “base her claims on the contract[s] executed between her husband and [Olshan] and at the same time seek to avoid the arbitration agreement.” Grantham, 784 So.2d at 289.
Mrs. Schultz’s claims, therefore, are subject to the arbitration provision of the 2006 and 2007 contracts. The trial court erred in denying Olshan’s motion to compel arbitration of Mrs. Schultz’s claims.

Conclusion

Insofar as the trial court denied Ol-shan’s motion to compel arbitration, its order is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and STUART, BOLIN, and MURDOCK, JJ., concur.

. Because the plaintiff in Dawson had not asserted a breach-of-warranty claim, because "in the abstract” the plaintiff's claims were not "necessarily dependant on the existence of a contract,” and because the defendant had not properly supported its arguments, this Court in Dawson concluded that the plaintiff was not estopped from avoiding arbitration. 57 So.3d at 99.