SHAW, Justice.
Ameriprise Financial Services, Inc. (“Ameriprise”), and Robert Shackelford, the defendants below (hereinafter referred to collectively as “the defendants”), appeal from the Autauga Circuit Court’s order denying, in part, their motion to compel arbitration of the claims asserted against them by the plaintiffs, Paul D. Jones and Eleanor G. Jones (hereinafter referred to collectively as “the plaintiffs”). Specifically, the defendants challenge the circuit court’s refusal to compel arbitration of the plaintiffs’ tort-of-outrage claim. We reverse and remand.

Facts and Procedural History

In 2009, Charles T. Jones opened two investment accounts with Ameriprise; Shackelford is an Ameriprise employee. In connection with the purchase of the accounts, Charles executed, among other documents, the “Ameriprise Brokerage Client Agreement for Tax-Qualified ... Brokerage Accounts” (hereinafter “the agreement”). The agreement contained an arbitration provision that provided, in pertinent part:
“Arbitration. By reading and accepting the terms of this Agreement, you acknowledge that, in accordance with the Arbitration section, you agree in advance to arbitrate any controversies, which may arise with the Introducing Broker or Clearing Broker.
“YOU AGREE THAT ALL CONTROVERSIES THAT MAY ARISE *265 BETWEEN US (INCLUDING, BUT NOT LIMITED TO THE BROKERAGE ACCOUNT AND ANY SERVICE OR ADVICE PROVIDED BY A BROKER OR REPRESENTATIVE), WHETHER ARISING BEFORE, ON OR AFTER THE DATE THIS ACCOUNT IS OPENED SHALL BE DETERMINED BY ARBITRATION.... BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:
“(A) ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.”
(Capitalization in original.)
In 2012, Charles executed both a durable power of attorney naming Paul as his attorney in fact and a will leaving all of his property to the plaintiffs. Thereafter, Paul allegedly contacted the defendants on numerous occasions seeking to háve the plaintiffs named as the beneficiaries of the Ameriprise accounts. The plaintiffs allege that, after Paul provided certain documents identified by Ameriprise as necessary to effect the beneficiary change, the defendants allegedly informed him that the plaintiffs had, in fact, been designated as the named beneficiaries on both accounts. However, according to the plaintiffs, Am-eriprise instead “reported to the Autauga County Sheriffs Department that [the plaintiffs had] kidnapped [Charles], and that his signature was forged on the documents provided.” Sheriff’s deputies later spoke with Charles, who allegedly denied both his kidnapping and the suspected forgery.
Charles died in January 2013, and the plaintiffs made a claim for the funds in the Ameriprise accounts. The defendants denied the claim, indicating that the plaintiffs had never been named beneficiaries.
The plaintiffs subsequently sued the defendants in the Autauga Circuit Court. The plaintiffs’ complaint alleged numerous counts, including breach of contract, bad faith, misrepresentation, tort of outrage, negligence, willfulness, and wantonness. In response, the defendants filed a motion seeking to compel arbitration of the plaintiffs’ -claims. Specifically, the defendants contended that, despite being nonsignato-ries to the agreement, the plaintiffs were nonetheless bound by its terms because they were claiming a direct benefit from the agreement.
The plaintiffs filed a response conceding that they were “equitably e'stopped from avoiding” arbitration as to all their claims except for the tort-of-dutrage count. That count stated: “The defendants, in misrepresenting facts to the plaintiffs and accusing the plaintiffs of kidnapping and forgery, knew or. should have known that such extreme or outrageous conduct would inflict extreme emotional distress upon the plaintiffs.” Unlike their other claims, which the plaintiffs acknowledged “depend upon the existence of [the agreement],” as to their tort-of-outrage claim, they maintained that
“there is no dependence on the existence of any contract and the prima facie elements of this cause of action can be proven with only the slightest references to the ... [agreement]. The existence of the subject accounts only provides ‘background’ information as to the circumstance surrounding [the defendants’ actions in] contacting the Autauga County Sheriffs Department and reporting that Charles Jones had been kidnapped. To prevail, ■ [the plaintiffs] need not prove the existence of the subject accounts. Additionally, the duty not to *266 engage in outrageous conduct does not arise out of the subject account; instead, the duty arose out of general tort and was owed to [the plaintiffs] regardless of any contractual relationship between Charles ... and Ameriprise.”
Relying on the foregoing, the plaintiffs argued that none of the four recognized exceptions pursuant to which this Court has allowed a nonsignatory to an arbitration agreement to be compelled to arbitration, namely agency, alter ego, third-party beneficiary, and intertwining/equitable es-toppel, applied. See, generally, Custom Performance, Inc. v. Dawson, 57 So.3d 90, 97-99 (Ala.2010). The circuit court agreed, concluding that all claims except the tort-of-outrage claim must be arbitrated and that the tort-of-outrage “claim shall proceed to trial in the ordinary course.” The defendants appeal solely as to the circuit court’s ruling on the arbitrability of the tort-of-outrage claim.

Standard of Review

“ ‘[T]he standard of review of a trial court’s ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review. Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999). Furthermore:
“ ‘A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. “After a motion to compel arbitration has been made and supported, the burden is on the- non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” ’
“Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (emphasis omitted)).”
Vann v. First Cmty. Credit Corp., 834 So.2d 751, 752-53 (Ala.2002).

Discussion

“The Federal Arbitration Act, 9 U.S.C. § 1 et seq. (‘the FAA’), provides that ‘[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable-’9 U.S.C. § 2. The FAA ‘mandates the arbitration of claims encompassed by an arbitration clause that is contained in a binding contract that involves interstate commerce.’ Ex parte Conference America, Inc., 713 So.2d 953, 955 (Ala.1998).”
Elizabeth Homes, L.L.C. v. Cato, 968 So.2d 1, 3-4 (Ala.2007).
In support of their motion to compel arbitration, the defendants produced a contract calling for arbitration, namely, the agreement.[1] Therefore, the burden then shifted to the plaintiffs to present evidence indicating that the arbitration provision did not apply to their claims against the defendants. Vann, supra.
As set out above, the plaintiffs conceded below that, despite the fact that they were nonsignatories to the agreement, they were nonetheless bound to arbitrate some of their claims because they were seeking to claim benefits dependent upon the *267 agreement, which contained the arbitration provision; by that acknowledgment, the plaintiffs both necessarily : established themselves as third-party beneficiaries of the agreement and rendered themselves subject to the accompanying burdens created thereby. See Dawson, 57 So.3d at 97-98 (holding that “[r]egardless of whether a nonsignatory is in fact a third-party beneficiary, the nonsignatory is treated as a third-party beneficiary — and is equitably estopped from avoiding arbitration — when he or she asserts legal claims to enforce rights or obtain benefits that depend on the existence of the contract that contains the arbitration agreement”). See also Cook’s Pest Control, Inc. v. Boykin, 807 So.2d 524, 526 (Ala.2001) (restating the general rule “ ‘that a third-party beneficiary cannot accept the benefit of a contract, while avoiding the burdens or limitations of that contract’ ” (quoting Georgia Power Co. v. Partin, 727 So.2d 2, 5 (Ala.1998))). However, “[t]o the extent that the nonsig-natory’s claims do not rely on the existence of the contract containing the arbitration provision, the nonsignatory is not estopped from avoiding arbitration.” Dawson, 57 So.3d at 98.
The plaintiffs present numerous claims on appeal, as to why they, as nonsig-natories, may not be compelled to arbitrate their tort-of-outrage claim. See, e.g. Boykin, 807 So.2d at 526 (explaining that, generally, “a nonsignatory to an arbitration agreement, cannot be forced to arbitrate [his] claims”). Specifically,,.they maintain that the third-party-beneficiary exception does not apply because, they contend, “[w]hen the subject . [agreement was] signed ... neither Ameriprise nor Charles ..,. intended to confer any direct benefit on [either. of the plaintiffs]”; that “[t]he ‘intertwining claims’ exception is inapplicable because, as signatories, Ameriprise and Shackelford cannot use this exception to compel non-signatories to arbitrate”; and that
“the ‘equitable estoppel’ exception does not apply because this exception is predicated on the equitable principle that a non-signatory cannot simultaneously .prosecute a claim that relies.on or,depends upon the existence of a contract containing an arbitration provision and ignore the contract’s arbitration provision.”
(Appellees’ brief,- at pp. 8-9.) The plaintiffs contend that their -tort-of-outrage claim is not dependent upon the agreement containing the arbitration provision. More specifically, they contend that the agreement has only a “tangential” connection to the facts giving rise to their tort-of-outrage claim, namely the purported false reporting of a forgery and a kidnapping. We cannot agree.
As set out above, the agreement, by its express terms, applies to'“all controversies that may arise.” The defendants note that this Court has held that “‘[t]he phhase “any controversy or claim arising out of or relating to” in arbitration agreements covers a broad range of disputes.’” (Appellants’ brief, at p. 20, quoting Vann, 834 So.2d at 754.) The language of the agreement refers to “any controversies” that arise between the parties and is not limited to those related to or arising from the agreement. The plaintiffs continue to assert, however, that they claim no benefits under the agreement that relate to the prosecution of their tort-of-outrage claim.
In order to determine whether “a third party’s claims can be so dependent upon a contract that a mere disavowal of third-party-beneficiary status cannot defeat a properly supported motion to compel arbitration,” we conduct a fact-specific analysis. Boykin, 807 So.2d at 526-27. In Olshan Foundation Repair Co. of Mobile *268 v. Schultz, 64 So.3d 598 (Ala.2010), we stated:
“We must consider the facts presented to us in this case to determine whether the tort claims asserted by Mrs. Schultz depend upon the existence of the 2006 and 2007 contracts containing the arbitration provision. See, e.g., [Custom Performance, Inc. v.J Dawson, 57 So.3d [90] at 98 [(Ala.2010)] (quoting .this Court’s statements in Cook’s [Pest Control, Inc. v. Boykin, 807 So.2d 524 (Ala.2001),] and stating: ‘Accordingly, to determine whether [the plaintiff] is equitably estopped from avoiding the contractual burden of arbitration, we must first consider whether, under the circumstances of this case, any of the legal claims asserted by [the plaintiff] are dependent on the existence of the contract that contains the arbitration agreement.’). . Mrs. Schultz alleges that Olshan negligently and wantonly performed work on the foundation of her house in August 2006, March 2007, and January 2008, thus damaging her house. It is undisputed that Olshan’s work on which Mrs. Schultz bases her claims was done pursuant to the 2006 and 2007 contracts. To support her claims, Mrs. Schultz must prove that Olshan owed her a .duty. Mrs. Schultz has not alleged, and we do not see how she may prove, the existence of such a duty without- reference- to the 2006 and 2007 contracts. As in [Capitol Chevrolet & Imports, Inc. v.] Grantham, [784 So.2d 285 (Ala.2000),] therefore, Mrs. Schultz’s claims depend upon the existence of the contracts containing the arbitration provision. Mrs. Schultz cannot simultaneously ‘base her claims on the contract^]' exécuted between her husband and [Olshan] and at the same time seek to avoid the arbitration agreement.’ Grantham, 784 So.2d at 289.”
64 So.3d at 609-10 (footnote omitted).
The plaintiffs’ tort-of-outrage claim arises from conduct by the defendants that occurred in connection with the plaintiffs’ attempts to effect a beneficiary change under the agreement. Without the agreement, the plaintiffs would never have contacted Ameriprise, and Ameriprise would never have contacted law enforcement with concerns regarding whether the documents submitted to effectuate the change had been forged and Charles had been kidnapped. In fact, it was only in Paul’s role as attorney in fact and agent for Charles, who was clearly bound by the duty to arbitrate all controversies, that the requested beneficiary change — and the allegedly outrageous response of Ameri-prise — occurred. Moreover, the allegedly “outrageous” nature of Ameriprise’s response to the requested benefit change must be viewed in the context of its own responsibilities in determining the validity of a requested beneficiary change on the affected accounts; therefore, the plaintiffs’ claims arise out of the manner in which they contend the beneficiary change — an act the defendants argue was specifically governed by the agreement — should have been effectuated.[2] See Edward D. Jones & Co. v. Ventura, 907 So.2d 1035, 1042 (Ala.2005). See also Edwards Motors, Inc. v. Hudgins, 957 So.2d 444, 448 (Ala.2006) (compelling arbitration of purchaser plaintiffs’ malicious-prosecution claim where automobile dealership had instituted criminal proceeding against plaintiffs, which was later dismissed, on ground thát arbitration provisión contained in purchase agreement covered plaintiffs’ claim, which “ ‘ “resulted] from or ar[ose] out of or related] to' or concerned] the transaction entered into” ’ ” (quoting Dan Wachtel Ford, Lin *269 coln, Mercury, Inc. v. Modas, 891 So.2d 287, 293 (Ala.2004))).
In sum, the nonsignatory plaintiffs have clearly conceded that they are third-party beneficiaries of the agreement. The scope of the arbitration provision in the agreement is indisputably broad enough to encompass the plaintiffs’ tort-of-outrage claim. Moreover, as the defendants note, “[t]he events surrounding the change of beneficiary [on the Ameriprise accounts] form the basis for all of the [plaintiffs’] claims.” (Appellants’ brief, at pp. 6-7.) Under the foregoing reasoning, the plaintiffs’ tort-of-outrage claim is, like their other claims, subject to the arbitration provision in the agreement. The circuit court, therefore, improperly denied the defendants’ motion seeking to compel arbitration of all of the plaintiffs’ claims.

Conclusion

We reverse the circuit court’s order insofar as it denied the defendants’ motion to compel arbitration of the plaintiffs’ tort-of-outrage claim and remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
STUART, BOLIN, PARKER, MAIN, and WISE, JJ., concur.
MOORE, C.J., and MURDOCK and BRYAN, JJ., dissent.

. There is no dispute that the transaction involved interstate commerce,

. We express no opinion as to the viability of One. plaintiffs’ tort-of-outrage claim.